THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES NESTER, Defendant-Appellant.

Second District   No. 83—615

Opinion filed April 17, 1984.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Charles Nester, was found guilty of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)) and was thereafter sentenced to a term of natural life imprisonment. He appeals, contending (1) that the trial court erroneously concluded that "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(b)), and, therefore, erred in imposing a sentence of imprisonment for his natural life; and (2) that section 5—8—1(a)(1)(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(b)) violates the Federal and State constitutional guarantees of due process and equal protection of the law.

The evidence at trial established that a beer party was held outdoors during the night of July 24 and early morning hours of July 25, 1982, in unincorporated Palatine, Illinois. It appeared to be a gathering of motorcycle people and 100 to 150 persons attended, including Jacqueline Gerasco, Susan Korth, Vincent Keenan and the defendant. At approximately 3:30 a.m. on July 25 an altercation occurred between Vincent Keenan and the defendant. Susan Korth, who was a friend of Keenan's, testified that she observed Keenan and defendant fight in an area that was illuminated by floodlights. She stated that the altercation commenced when Keenan came to the aid of Jacqueline Gerasco, whom the defendant and a friend of his had been harassing with lewd gestures and argument. When defendant struck Gerasco, Keenan ran to her aid.

Korth estimated that defendant weighed 180 pounds and was 5 feet 11 inches tall, whereas Keenan was 5 feet 5 inches in height and weighed 130 pounds. She further testified that when Keenan began to help Gerasco the defendant hit and punched him knocking Keenan to the ground where he remained for a short time. When Keenan regained his feet, he and defendant got into a shouting argument and, although Korth attempted to get Keenan to stop arguing, the fight commenced again. Defendant then punched Keenan who fell on top of Korth. As Keenan fell, Korth saw the defendant strike Keenan in the chest with a knife, which passed very close to her face. Keenan got up and walked a short distance and collapsed. Korth testified that Keenan did not have a weapon and that the fight did not last for more than five minutes. After the incident, the defendant walked

away and proceeded to an area near a garage.

Jacqueline Gerasco, who attended the gathering with her boyfriend and Korth, testified that defendant and another man had harassed her at the party with descriptions of her physical attributes and called her obscene names. Defendant then pushed her, knocking her glasses from her face. According to Gerasco, Keenan then told defendant and his companion to leave her alone and defendant moved forward to push Keenan and a shoving and punching match began between them which lasted for about a minute. The fight subsided and then erupted again. Gerasco testified that Korth attempted to persuade Keenan to quit fighting, but was unsuccessful. The defendant lunged towards Keenan who fell on Korth and the defendant walked away. Keenan stook up momentarily, then collapsed. This witness did not see defendant wield a knife.

Doctor Helen Young, a forensic pathologist, conducted an autopsy of the victim and stated that he was 5 feet 3½ inches tall and weighed 135 pounds. Keenan sustained a single stab wound on the right side of the chest, an abrasion on the left side of the forehead, and a bruise on the under surface of the scalp; that the wound to the chest cut through Keenan's breastbone striking the pulmonary artery of the heart, causing his death. The doctor noted it would take a good degree of force to insert a knife through the sternum of an adult male.

Defendant testified at trial that he had been drinking in a bar earlier on the day of July 24 and drank beer at the party all night long. He stated that he was 10 to 15 feet from Keenan when a confrontation broke out and that approximately six persons were involved in a pushing and shoving fracas and the trading of punches. Defendant testified that he went to the aid of a friend and was struck several times and also that he hit a few people. Defendant denied that he had possessed a knife or other weapon or that he had stabbed anyone nor did he see anyone stabbed at the party.

After hearing arguments of counsel at the sentencing hearing, the trial court offered the defendant an opportunity to speak in his own behalf, but he declined to do so. The trial court thereupon reviewed the record of the case, including the presentence report, and stated that it "would be very difficult to say there was any opportunity for rehabilitation." The court further found that there was no provocation for defendant's action and that "the defendant had by far the advantage in the situation and would not let up, even though he was *** no danger whatsoever." The court also noted that the defendant had previously been convicted of attempted murder. The trial court thereupon

found that the defendant "showed a complete lack of mercy, complete recklessness, complete wanton behavior," and concluded that defendant's acts "were accompanied by exceptionally brutal conduct and by exceptionally heinous behavior indicative of wanton cruelty." It thereupon imposed the sentence of natural life imprisonment from which defendant appeals.

Defendant contends first that under the facts of this case the murder was not accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and the trial court was therefore not authorized to impose a sentence of natural life imprisonment. He argues that the victim initiated the fight; that defendant's conduct in inflicting the knife wound was not a preplanned or deliberate act, but rather occurred in the heat of the fight; and that defendant's conduct in the present case, when compared to that which was found in other cases to justify either an extended term or a natural life sentence, was insufficiently egregious in terms of its brutality or heinousness indicative of wanton cruelty to warrant imposition of a life sentence under section 5—8—1(a)(1)(b) of the Code. He requests that this court exercise its authority under Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)) and reduce his sentence to a nonextended term of imprisonment.

The Unified Code of Corrections provides that the trial court may impose a sentence of natural life imprisonment for murder if the offense "was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(b)). (*People v. Holloway* (1983), 119 Ill. App. 3d 1014, 1022; *People v. Barber* (1983), 116 Ill. App. 3d 767, 779.) The Code does not require, as a prerequisite to finding that the defendant's behavior was brutal or heinous, a showing that torture or unnecessary pain was inflicted upon the victim. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501; *People v. McGee* (1984), 121 Ill. App. 3d 1086, 1089; *People v. Goodman* (1983), 116 Ill. App. 3d 125, 131-32.) Conduct is "heinous" if it is hatefully or shockingly evil, grossly bad, or enormously and flagrantly criminal. "Brutal" includes conduct which is grossly ruthless, devoid of mercy or compassion, or cruel and cold-blooded. 88 Ill. 2d 482, 501.

It is clear that the legislative sentencing scheme requires that the degree of brutality or heinousness must be exceptional. (*People v. McGee* (1984), 121 Ill. App. 3d 1086, 1089; *People v. Fieberg* (1982), 108 Ill. App. 3d 665, 670; *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 651, *cert. denied* (1981), 449 U.S. 1127, 67 L. Ed. 2d 115, 101 S. Ct. 948), and, in evaluating the brutality or heinousness of a defend-

ant's conduct, the court must evaluate all of the facts surrounding the incident in question. *People v. McGee* (1984), 121 Ill. App. 3d 1086, 1089; *People v. Grady* (1982), 107 Ill. App. 3d 970, 977; *People v. Devine* (1981), 98 Ill. App. 3d 914, 925, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490.

Defendant's assertion that his conduct does not fall within the purview of section 5—8—1(a)(1)(b) because it occurred as a result of a fight which was initiated by the victim is not supported by the evidence. Keenan came to the place of his death in aid of a woman who was being harassed by defendant, and it was defendant who initiated the physical contact between them by striking Keenan in the face and knocking him down. After the initial flurry of blows had subsided, defendant again struck Keenan and knocked him down a second time and, while Keenan was falling, defendant inflicted the fatal knife wound. It is also apparent there was a substantial physical difference between Keenan and defendant, the victim being outweighed by approximately 50 pounds and being over seven inches shorter than the defendant. There can be no reasonable suggestion made under these facts that the defendant was in any personal danger when he stabbed Keenan, and clearly had no justification of self-defense in doing so.

Defendant further argues that his conduct in stabbing Keenan cannot be deemed exceptionally brutal or heinous behavior indicative of wanton cruelty because it was not a preplanned or deliberate act, but occurred in the heat of a fight. It is apparent, however, that insofar as Keenan was concerned the fight was over when the fatal wound was inflicted as Keenan was then falling to the ground. It has been determined that a murder which is premeditated and committed with cold-blooded deliberation does fall within the purview of section 5—8—1(a)(1)(b). (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501; *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 1020; *People v. Winston* (1982), 106 Ill. App. 3d 673, 688.) While defendant's conduct in the present case does not show the extended premeditation existing in the cases to which we have referred, it does demonstrate a cold-blooded attack upon a person who had already been beaten in a fight.

Defendant compares the facts in this case to those in *People v. Hudson* (1981), 95 Ill. App. 3d 350, *People v. Darnell* (1981), 94 Ill. App. 3d 830, and *People v. Merchel* (1980), 91 Ill. App. 3d 285, in which the reviewing courts found defendant's conduct to establish wanton cruelty, and argues that the *indicia* of wanton cruelty there demonstrated was far greater than his in the present case. It is also apparent, however, that defendant's conduct in this case was more reprehensible, cruel and heinous than occurred in other cases which

found a lack of exceptionally brutal or heinous behavior indicative of wanton cruelty. Compare *People v. Reynolds* (1983), 116 Ill. App. 3d 328, 332; *People v. Fieberg* (1982), 108 Ill. App. 3d 665, 669-71; *People v. Lieberman* (1982), 107 Ill. App. 3d 949, 959.

This court has recently held that a single act which causes death or injury may be sufficient to demonstrate the existence of wanton cruelty. (*People v. McGee* (1984), 121 Ill. App. 3d 1086, 1090-91; see *People v. Strait* (1983), 116 Ill. App. 3d 110, 115; *People v. Rowe* (1983), 115 Ill. App. 3d 322, 329.) It has also been held that a defendant's subsequent demonstration of remorse for his conduct or the lack of a penitent spirit is an important factor in determining whether his conduct is indicative of wanton cruelty. (See *People v. La Pointe* (1981), 88 Ill. 2d 482, 501.) Here, defendant simply walked away from the victim after inflicting the knife wound and made no attempt to help him. Furthermore, when offered an opportunity to speak at the sentencing hearing, he declined to do so. No evidence is found in this record that defendant at any time exhibited sorrow or remorse for his conduct.

We conclude that the trial court did not abuse its discretion in sentencing defendant to natural life imprisonment.

Defendant also contends that section 5—8—1(a)(1)(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(b)) violates the Federal (U.S. Const., amend. XIV) and State (Ill. Const. 1970, art. I, sec. 2) constitutional guarantees of due process and equal protection. He notes that under that section of the Code the court may sentence a defendant who is convicted of murder to a term of natural life imprisonment if it finds that "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." He also notes that a court may sentence a defendant to an extended term of imprisonment if it determines that "the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)(1); Ill. Rev. Stat., 1982 Supp., ch. 38, par. 1005—5—3.2(b)(2).) Therefore, defendant asserts, the Code provides two distinct penalties for one class of offenders without setting forth criteria for differentiating between those to be sentenced under the two provisions, and concludes that because the legislature provided no guidance to direct the trial judge in the exercise of his discretion to impose either a natural life or an extended-term sentence on the basis of this same factor, that section 5—8—1(a)(1)(b) is applied in an arbitrary and capricious manner and contravenes his right to due process. In addition, defendant concludes that his right to equal protection of the laws is

violated because no rational basis exists for differentiating one class of offender who may be sentenced to natural life from another class of offender who may be sentenced to an extended term where both classes have committed murders accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

■ Defendant, however, failed to raise the present constitutional challenge to the sentencing statute in the trial court either at the sentencing hearing or by post-trial motion and his failure to do so constitutes a waiver of that issue on review. (*People v. Amerman* (1971), 50 Ill. 2d 196; *People v. Coleman* (1983), 120 Ill. App. 3d 851, 853.) We note the same issue was recently considered and rejected in *People v. Cartalino* (1982), 111 Ill. App. 3d 578. See also *People v. Perez* (1983), 113 Ill. App. 3d 143, 151.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.