THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT TAYLOR, Defendant-Appellant.

First District (4th Division)   No. 85—2359

Opinion filed December 17, 1987.

Paul P. Beibel, Acting Public Defender, of Chicago (Vicki Rogers, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Sharon L. Gaull, and John A. Gasiorowski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Robert Taylor, was convicted of armed robbery and murder in a jury trial and resentenced to life imprisonment. It is from this sentence that defendant appeals and raises the following three issues: (1) whether the sentencing court erred in finding, as an aggravating factor, that the homicide occurred during the commission of a burglary; (2) whether the sentencing court erred in imposing a life sentence based on the finding, as an aggravating factor, that the murder was exceptionally brutal and heinous; and (3) whether the sentencing court abused its discretion by imposing a natural life sentence without considering his potential for rehabilitation.

We affirm.

Testimony at trial adduced the following facts. On March 7, 1979, Ronald Howell, who resided at 1157 North Cleveland Avenue in Chicago, Illinois (also known as Cabrini Green Public Housing), and Romy Wright heard gunshots as they descended on the elevator in the Cabrini Green building. When the elevator reached the lobby

level, Howell saw a neighbor standing near the stairwell and heard her screaming. Howell then saw Robert Taylor bending over Freddie Lampton's body. Freddie was also a resident of Cabrini Green. Howell testified that as Taylor bent over Freddie's body it appeared as though he removed a watch and something else from decedent's pocket. Once Taylor noticed Howell, he aimed a gun at him, but Howell escaped into the adjoining building. Howell identified Robert Taylor in a lineup and in court as being the man he encountered in the lobby.

Chicago police officer Howard Hagen arrived shortly thereafter and discovered the deceased on the stairwell. Defendant was apprehended on March 9, 1979, by Officer Grandy, who recovered a revolver from defendant's waistband. The revolver was later identified as the weapon used in the murder of Freddie Lampton.

Subsequent to defendant's arrest, on March 10, 1979, Assistant State's Attorney Mary Shropshire, who was assigned to the felony review unit of the State's Attorney's office, had a conversation with defendant. Her partner was present. Shropshire informed defendant that she was not his attorney. After being advised of his *Miranda* rights, defendant informed Shropshire that on the night in question he was at his aunt's house until 7:30 p.m. He also said that he had not been in Cabrini Green since 1973. In response to questioning concerning the weapon he was carrying when he was arrested, defendant admitted that he had purchased the gun a week earlier. Defendant said he had not given the gun to anyone else and that no one else knew he had a gun.

The deceased's wife, Virginia Lampton, testified that her husband's watch and wallet had not been seen since Wednesday, March 7, the day of his murder. She stated that Freddie received his paycheck on Wednesdays. However, Officer Hagen, who examined Freddie's body at the scene of the crime, did not find any identification, wallet, money, or watch on decedent's body.

The court also heard testimony pertaining to two similar incidents which occurred in the same vicinity within a few days of Freddie's murder. The assailant in these incidents also carried a gun—later identified as the same gun used to murder Freddie Lampton. Both victims positively identified defendant as their assailant. Defendant was found guilty and convicted for these offenses.

In mitigation, defendant presented testimony of Maria Sattar, a counselor and job developer for the Safe Foundation. Miss Sattar opined that defendant appeared to be a very intelligent person who knew what he was doing. Defendant's mother also testified and

defendant testified on his own behalf.

At the close of all arguments, the jury rendered a guilty verdict and the court sentenced defendant to 60 years' imprisonment for the armed robbery offense and further sentenced him to death for the murder conviction. On direct appeal, the Illinois Supreme Court in *People v. Taylor* (1984), 101 Ill. 2d 508, reversed the armed robbery conviction, affirmed the murder conviction, but vacated the death sentence. The court remanded the case to the trial court with directions to impose a sentence other than death for the murder conviction. The sentencing court resentenced defendant to life imprisonment in the Illinois Department of Corrections.

## I

Defendant's first and second contentions on appeal are that the sentencing court erred in imposing a life sentence based on its finding that burglary and the commission of an exceptionally brutal and heinous murder were aggravating factors. However, it is not necessary for both of these aggravating factors to be present before imposing a life sentence. The Unified Code of Corrections provides:

"Sec. 5—8—1. Sentence of Imprisonment for Felony. (a) A sentence of imprisonment for a felony shall be a determinant sentence set by the court under this Section, according to the following limitations:

(1) for murder, *** if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment; .***." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1).)

Section 9—1 of the Illinois Criminal Code of 1961 lists burglary as one of the aggravating factors. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(6)(c).) Therefore, we will first discuss whether the sentencing court properly determined that burglary was an aggravating factor to the homicide.

■ Defendant asserts that the building was open to the public and the State failed to prove that he entered the building for the purpose of committing a burglary. He argues a reasonable hypothesis exists that he could have entered the building for a variety of reasons other than to commit a burglary.

Defendant primarily relies on *People v. Kelley* (1916), 274 Ill. 556. In *Kelley,* defendant stood in a line leading out of a store where

circus tickets were being sold. While in line, defendant attempted to pick the pocket of the man in front of him. He then crossed the street and got in the line leading into the store. The reviewing court held that felonious intent was not proved beyond a reasonable doubt where defendant's "presence in the store [was] as consistent with his innocence as with his guilt of the criminal intent at the time of his entry." *Kelley,* 274 Ill. at 558.

The present case is distinguishable from *Kelley.* Unlike in *Kelley,* the facts here show that the defendant had committed two almost identical offenses within one block and within two days of the crime in question. Moreover, defendant told Assistant State's Attorney Shropshire that he had not been in the Cabrini Green area since 1973. These facts evidence no other legitimate reason for being in the building other than to commit a burglary.

The Illinois Criminal Code provides: "A person commits burglary when without authority he knowingly enters or without authority remains within a building *** with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a).) It is well established in Illinois that a building opened to the public can be the subject of a burglary. (See *People v. Weaver* (1968), 41 Ill. 2d 434.) "But authority to enter a *** building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. [Citation.] An entry with intent to commit a theft cannot be said to be within the authority granted ***." (*Weaver,* 41 Ill. 2d at 439.) Therefore, the element of entry without authority need not be established apart from the element of entry with intent to commit a felony, because entry with the intent to commit a felony is entry "without authority." *People v. Schneller* (1966), 69 Ill. App. 2d 50, 54.

The elements of burglary often must be proved by circumstantial evidence. (*People v. Richardson* (1984), 104 Ill. 2d 8, 13.) Intent is the gravamen of the offense and must be proved beyond a reasonable doubt (*People v. Kelley* (1916), 274 Ill. 556, 558), but it can be inferred from the surrounding circumstances (*People v. Richardson* (1984), 104 Ill. 2d 8, 13). Additionally, "evidence of other crimes is inadmissible if relevant merely to establish the defendant's propensity to commit a crime. [Citation.] Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi,* intent, identity, motive or absence of mistake." *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, 823-24, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.

■ The record shows defendant was convicted and received prison terms for two similar offenses committed within two days of the present offense. Furthermore, there is no evidence in the record that defendant had family, friends or business acquaintances residing in the building. Since the evidence established beyond a reasonable doubt that defendant entered the building with the intent to commit a felony, the element "without authority" is also satisfied and the crime of burglary is proved.

■ "A reviewing court will not substitute its opinion for that of the trier of fact unless the proof is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. [Citation.]" (*People v. Schneller* (1984), 69 Ill. App. 2d 50, 54-55.) The evidence in the record does establish defendant's guilt beyond a reasonable doubt. Therefore, the imposition of a life sentence was proper in light of the trial court's finding that burglary was an aggravating factor to the murder.

## II

We will now discuss defendant's contention that the sentencing court erred in imposing a life sentence based on its finding as an aggravating factor that the murder was exceptionally brutal and heinous. He claims that there were no eyewitnesses to the murder and medical evidence at trial showed only that the deceased died from two gunshot wounds.

Defendant primarily relies on *People v. Holiday* (1985), 130 Ill. App. 3d 753, to support his above argument. In *Holiday,* the defendant left a dice game and later returned brandishing a gun. He shot the victim twice in the chest. The victim pulled out a gun and shot once, missing the defendant. The court held that the murder was not exceptionally brutal or heinous. (*Holiday,* 130 Ill. App. 3d at 757-58.) Here, unlike *Holiday,* there was no evidence that the victim struggled with the defendant or had a weapon with which to defend himself. Also, there were no facts indicating that any type of relationship existed between the defendant and the deceased. The facts in *Holiday* indicate that the defendant and the deceased were gambling buddies and that the murder probably arose out of prior gambling dealings. Thus, defendant's reliance on *Holiday* is without merit.

■ "[I]n evaluating the brutality or heinousness of a defendant's conduct, the court must evaluate all of the facts surrounding the incident in question." (*People v. Nester* (1984), 123 Ill. App. 3d 501, 504-05.) Moreover, "a single act which causes death or injury may also be sufficient to demonstrate exceptionally brutal or heinous behavior."

(*People v. McGee* (1984), 121 Ill. App. 3d 1086, 1090-91.) Furthermore, defendant's failure to manifest remorse for his act has also been held to be an important factor in establishing wanton cruelty. *McGee,* 121 Ill. App. 3d at 1091.

■ The evidence at trial established the following facts: the deceased was unarmed and defenseless; the deceased did not provoke defendant's behavior; and the defendant shot the deceased twice at close range with knowledge that such an act could result in death or permanent injury. Based on these facts, including defendant's lack of remorse for his conduct, the sentencing court properly concluded that the murder was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. Hence, the sentencing court could have imposed a life sentence based on a finding either that the burglary or the commission of an exceptionally brutal and heinous murder was an aggravating factor.

### III

The defendant's final contention is that the sentencing court abused its discretion in sentencing him to life imprisonment without considering his rehabilitative potential. Defendant alleges his sentence was based on erroneous findings and was unduly harsh and excessive.

■ The proper standard in determining whether or not the trial court erred in fixing sentence is whether the trial court abused its discretion. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) "The record must show that the trial judge considered both the seriousness of the crime and the defendant's rehabilitative potential." (*People v. Bartik* (1981), 94 Ill. App. 3d 696, 702.) However, in his recitation of reasons for a particular sentence, the trial judge is not required to itemize and set value on each item of evidence considered at the sentencing hearing. *People v. Meeks* (1980), 81 Ill. 2d 524, 534.

■ The court's findings were as follows: defendant was guilty of murder; the murder was exceptionally brutal and heinous, indicative of wanton cruelty; and the murder was committed during the commission of a burglary. The court also noted that defendant had four prior felony convictions and showed no likelihood of rehabilitation following two previous periods of imprisonment. A presentence report also revealed defendant's character, education, and family history. Clearly, the above facts disclose that the trial judge examined both the seriousness of defendant's crime and his rehabilitative potential.

Therefore, considering all of the circumstances in evidence in this case, we cannot say that the sentence was excessive or that the trial

court abused its discretion in imposing the sentence of natural life imprisonment.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McMORROW, P.J., and LINN, J., concur.