SIXTH DIVISION

November 8, 2002

No. 1-01-3760

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

) 

)

ANDRE LEWIS, a/k/a Dary Lewis, ) 

) Honorable

Defendant-Appellant. ) Stuart E. Palmer,

) Judge Presiding.

JUSTICE O’MARA FROSSARD delivered the opinion of the court:

Defendant Andre Lewis (also known as Dary Lewis) entered an open plea of guilty to two counts of first degree murder for the beating death of the victim, P. B., a five-year-old boy.  The State sought imposition of the death penalty.  At the death penalty hearing, the court found that defendant qualified for the death penalty because the crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty under section 9-1(b)(7) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/9-1(b)(7) (West 1998)).  However, the trial judge did not impose the death penalty because of mitigating factors, primary of which was defendant’s guilty plea.  
Defendant was sentenced to life in prison pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (Code), which provided that the maximum sentence for the murder of a child under age 12 by a defendant who was at least 17 years old was death, and that the minimum sentence was a term of natural life imprisonment.  730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998).  

On direct appeal this court vacated defendant’s sentence and remanded his case for re-sentencing because, following the imposition of his sentence, the statute under which he was sentenced was ruled unconstitutional in 
People v. Wooters
, 188 Ill. 2d 500 (1999).  
People v. Lewis
, No. 1-99-3226 (2000) (unpublished order under Supreme Court Rule 23).  On remand, the trial judge again sentenced defendant to life in prison.  Defendant on appeal contends the trial judge abused his discretion by imposing a life sentence because defendant’s behavior was not exceptionally brutal or heinous indicative of wanton cruelty.   

BACKGROUND

I
n our previous order we recognized that the instant case is a capital case in which, after a hearing, the judge found that defendant qualified for the death penalty, but based on mitigating factors, sentenced him to life imprisonment.  We addressed the fact that the statute under which defendant was sentenced to life imprisonment was declared unconstitutional in 
Wooters
 by the Illinois Supreme Court
, which found that it violated the single-subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8).  
Wooters
, 188 Ill. 2d at 502.  We recognized that the effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment.  
People v. Gersch
, 135 Ill. 2d 384, 390 (1990).  We noted that a defendant cannot be prosecuted under an unconstitutional statute.  
People v. Manuel
, 94 Ill. 2d 242, 245 (1983), citing 
People v. Meyerowitz
, 61 Ill. 2d 200 (1975).  Therefore, we vacated defendant’s sentence of mandatory life imprisonment and “remanded for resentencing in accordance with the law in effect prior to the enactment of 730 ILCS 5/5-8-1(a)(1)(c)(ii) (Pub. Act 89-203 (eff. July 21, 1995)).”  
Lewis
, No. 1-99-3226, at 8.  

The minimum sentence under section 5-8-1(a)(1) prior to its amendment by Public Act 89-203 (Pub. Act 89-203, eff. July 21, 1995) was 20 years (see 730 ILCS 5/5-8-1(a)(1)(a) (West 1994)).  The trial court admonished defendant before he originally pled guilty that the minimum sentence under section 5-8-1(a)(1)(c)(ii) was a term of natural life.  
Lewis
, No. 1-99-3226, at 2.  As such, defendant received an admonishment that was clearly erroneous, not as a result of any error by the trial court but as a direct result of the fact that the statute under which he was sentenced was shortly thereafter ruled unconstitutional by the Illinois Supreme Court.  
Wooters
, 188 Ill. 2d at 502.  We, therefore, concluded his plea could not be considered voluntary and intelligent.  
Lewis
, No. 1-99-3226, at 3.  

Specifically, we indicated as follows: 

“Accordingly, defendant’s sentence of life imprisonment is vacated and the cause is remanded for resentencing in accordance with the law in effect prior to the enactment of 730 ILCS 5-8-1(a)(1)(c)(ii) (Pub. Act. 89-203 (eff. July 21, 1995)).  Upon remand, defendant may move to vacate his guilty plea.  Should defendant choose not to vacate his guilty plea, the circuit court is barred from imposing the death penalty upon him.  Should defendant choose to vacate his guilty plea, the State is not barred at sentencing from seeking the death penalty if the defendant is proven guilty beyond a reasonable doubt at trial.”  
Lewis
, No. 1-99-3226, at 8. 

REMAND

On remand, defendant did not move to withdraw his guilty plea.  At the outset of the sentencing hearing on remand, the trial court noted, and defense counsel acknowledged, that defendant had indicated he wanted to maintain his guilty plea.  When the trial court then asked defense counsel if that was still defendant’s position, defense counsel responded affirmatively.  After the trial court confirmed defendant wanted to maintain his guilty plea, defense counsel 
and the State stipulated to the evidence presented at the original bifurcated sentencing hearing.  After the hearing, the trial court again sentenced defendant to natural life in prison
.  In support of its sentence, the trial court noted it had previously found, during the original sentencing hearing, that the commission of defendant’s offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. 

During the first part of the bifurcated hearing, which addressed defendant’s eligibility for the death penalty, the State published
 
defendant’s confession to Assistant State’s Attorney Thomas Mahoney.  Defendant stated in his confession 
that on Friday, June 13, 1997, the victim’s mother dropped the victim off at defendant’s house for the weekend.  When the victim’s mother came to pick the victim up on Sunday, defendant told her he wanted the victim to stay with him a few more days.  She  agreed, and when she returned on Wednesday to pick the victim up, defendant again told her he wanted
 the victim to stay with him.  The victim’s mother agreed to let defendant keep the victim until Thursday.  As she was leaving defendant’s house around 4:15 p.m. Wednesday, the victim began crying and asked to go home with his mother.  Defendant told him to stay and everything was going to be okay.

Wednesday evening the victim began crying, and defendant 
tried to console him by telling him he would take him to the zoo and get him a bike.  When this attempt at consolation failed, defendant indicated in his confession that he slapped the victim three or four times in the face.  Defendant then stated that he punched the victim, who was still crying, 10 times in the side, stomach, and back.  The victim told defendant he did not want to be with him and that he wanted to go home with his mother and that he loved his mother.  Defendant responded that he wanted to be the victim’s friend.  When the victim told defendant he did not want to be his friend, defendant felt “[h]urt, upset, [and] a little angry.”  The victim then 
called defendant a “shit-head,” and defendant responded by slapping the victim’s mouth and the back of his head three or four times.  The victim was still crying.  Between 8 p.m. and 8:30 p.m. on Wednesday evening, the victim stopped crying and defendant gave him his asthma medication and put him to bed.  

The next morning, Thursday, June 19, 1997, according to defendant’s confession, the victim and defendant got up between 10:30 a.m. and 11 a.m.  After the victim brushed his teeth, he began crying again and told defendant he wanted to go home.  Defendant responded that he wanted the victim to stay with him, and the victim in turn repeated he wanted to go home.  Defendant in his confession indicated that, angered by the victim’s responses, he hit the back of the victim’s head three or four times with his open hand and kicked the victim’s leg, side, and back a few times.  Defendant then punched the victim but could not recall how many times. The victim was crying while defendant was hitting and kicking him.  At some point defendant stopped kicking and hitting the victim, and the victim told defendant that he was sleepy.  Defendant gave the victim his asthma medication and put him to bed around noon on Thursday.

Defendant watched television, went outside to talk with his uncle’s fiancee, and then 
returned inside and checked on the victim.  Defendant indicated in his confession that after noticing the victim was breathing abnormally and still lying in bed, defendant gave him cardiopulmonary resuscitation (CPR).  The victim was making funny noises breathing and did not respond when defendant asked him if he was all right.  Defendant then sat the victim up, and the victim made gurgling noises and subsequently began spitting a yellow-green fluid out of his nose and mouth.  Defendant laid the victim back down, left the house and started walking up and down the block, and then returned to the house.  After approximately 10 to 15 minutes, at around 5 p.m., defendant went to see two friends.  Defendant then returned 
to his house again.  He stayed there briefly and then went to a friend’s house before ultimately spending Thursday night at the house of a female friend. 

On Friday, June 20, 1997, defendant’s female friend dropped him off at another friend’s house, and while there he saw his aunt’s fiancé.  After she told defendant he needed to go home, he left his friend’s house.  As he was walking toward his house, he saw his aunt, uncle, grandfather, and the fiancée of his uncle.  They asked defendant whether he knew the victim was dead.  Defendant initially answered no, but then admitted he was aware the victim was dead.  Defendant told them he got scared, went into shock, and did not know what to do
. 

During the hearing, Dr. Nancy Jones, an assistant medical examiner with the Cook County medical examiner’s office who, defendant and the State stipulated, was an expert in the field of forensic pathology, testified she reviewed the victim’s entire case file.  That file included, among other items, X rays and photographs of the victim, a postmortem examination report prepared by Dr. Larry Sims, and 
the 
external and internal examinations performed by Dr. Sims.  Dr. Jones indicated the autopsy report prepared by Dr. Sims revealed numerous blunt trauma injuries to the victim.  Dr. Sims’ external examination revealed multiple contusions on the victim’s chest, abdomen, and back as well as abrasions on his genitals and penis.  His internal examination revealed multiple areas of bleeding under the victim’s scalp as well as bleeding in the subcutaneous tissues of his chest, abdomen, and back.  In addition, the victim had bleeding around both kidneys as well as hemorrhaging around his pelvis and spine.  The victim’s liver, spleen, and brain were pale, indicating severe blood loss.  Dr. Jones stated that the injuries revealed by Dr. Sims’ examination were consistent with being struck with a closed fist and being kicked.  Dr. Jones opined that the victim died as a result of blunt abdomen trauma caused by multiple blunt force injuries.  Dr. Jones also indicated that
 the severity and seriousness of the victim’s internal injuries may not have initially been apparent.  She indicated that very little time transpired between the injury to the victim’s liver and his death.

At the conclusion of the death eligibility portion of the hearing and pursuant to section 9-1(b)(7) of the Criminal Code (720 ILCS 5/9-1(b)(7) (West 1998)), the trial court found beyond a reasonable doubt that the victim was under 12 years of age and that his death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty.  Based on this finding, the trial court concluded defendant was eligible for the death penalty.

During the second portion of the bifurcated hearing, 11 witnesses testified in mitigation on behalf of defendant.  Defendant did not testify on his own behalf.  The witnesses in mitigation included friends and family members.  All testified to defendant’s good character and nonviolent nature.

The trial court asked defendant whether there was anything he wanted to say before the trial court imposed his sentence.  Defendant answered, “No.”

At the conclusion of the original sentencing hearing, the trial court declined to sentence defendant to the death penalty, but instead imposed a term of natural life in prison under the mandatory life sentence provision.  730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998).  Prior to imposing that sentence, the trial court noted:

“[W]e have what is obviously an exceptionally brutal

crime.  The clearly savage beating of a child which resulted in an innocent and defenseless child’s death.

In addition to that, the defendant’s conduct subsequent to the beating, the travels that he went to, the places that he went to, the people that he talked to while the child was at home dying shows an indifference that is truly, again, a word that doesn’t adequately describe it, but truly troubling to me.”

Regarding aggravation and mitigation the court indicated:

“I take it [sic] into consideration everything that’s been brought to me in aggravation and mitigation and I’ve taken into account the nature and the circumstances of this offense and [the] character of the defendant.”

            The court concluded:

“Based on everything that I’ve said, the Court finds that the Court cannot find that there are not sufficient mitigating factors to preclude the imposition of the death penalty.  As a result, Mr. Lewis will be sentenced to the term of natural life in prison.”

At the sentencing hearing on remand, after defendant and the State stipulated to the evidence presented at the original sentencing hearing, the trial court asked defendant whether there was anything he wanted to say before the trial court imposed his sentence.  Defendant answered, “No.”  The court then stated it had considered everything brought to its attention in aggravation and mitigation, including the presentence investigation report ordered following our remand of this case, and had considered the arguments presented by counsel.  The court imposed a sentence of natural life under the discretionary life sentence provision.  730 ILCS 5/5-8-1(a)(1)(b) (West 1994).  In imposing sentence, the court indicated as follows: 

“All right.  I’m well-familiar with this case.  I’m well-familiar with the facts involved.  I have taken into consideration everything that was brought to my attention in aggravation and mitigation.  I have taken in consideration in addition to that [sic] the presentence investigation that was ordered for the defendant, and I have taken into consideration the arguments I have heard here today.

I have also considered in my opinion - in addition to the history and character of the defendant, the nature and circumstances of this offense.  I have already found at the eligibility phase that the conduct here was accompanied - or that the death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty.

The Court finds the only appropriate sentence in this matter is the sentence of natural life imprisonment, and that will be the order.”

Defendant contends, as a preliminary matter, that our prior decision remanding his case required the trial court to conduct a full resentencing hearing upon remand, that the trial court erred by not conducting such a hearing, and that, “[t]herefore, as a technical matter, [he] is entitled to a second remand for a full resentencing hearing.”  Defendant does not identify any particular evidence he was prohibited from introducing at the hearing conducted on remand.  Defendant does not indicate how he was prejudiced by the manner in which the hearing was conducted.  

Our previous order remanding this case provided that “the cause is remanded for resentencing in accordance with the law in effect prior to the enactment of 730 ILCS 5/5-8-1(a)(1)(c)(ii) (Pub. Act 89-202 (eff. July 21, 1995)).”  A review of the hearing conducted upon remand shows that the trial court considered a new presentence investigation report.  We note defendant did not attempt to present any additional evidence in mitigation or regarding whether his behavior was exceptionally brutal or heinous indicative of wanton cruelty.  Instead, defendant stipulated to the evidence presented at the original sentencing hearing and acknowledged that the evidence presented during the death eligibility portion of that hearing was relevant both in aggravation and 
to the exceptionally brutal or heinous finding.  Given these circumstances, we reject defendant’s argument that the trial court failed to properly conduct a resentencing hearing.

Defendant primarily contends on appeal that his life sentence should be vacated because the trial court abused its discretion by finding his offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  
As noted in our previous decision, the statute under which defendant was originally sentenced was declared unconstitutional in 
Wooters
 by the Illinois Supreme Court
, which found that it violated the single-subject rule of the Illinois Constitution.  
Lewis
, No. 1-99-3226, at 2; 
Wooters
, 188 Ill.2d at 502.  
That statute, which provided for mandatory life imprisonment, stated  “the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant *** is a person who, at the time of the commission of the murder, had attained the age of 17 or more and is found guilty of murdering an individual under 12 years of age; ***.”  See 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998); Pub. Act 89-203 eff. July 21, 1995.  As previously noted, because defendant was sentenced under an unconstitutional statute, we vacated his sentence and remanded for resentencing in accordance with the law in effect prior to the enactment of section 5-8-1(a)(1)(c)(ii) (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998); Pub. Act 89-203 eff. July 21, 1995). 

The law that applies to this case provides for discretionary rather than mandatory life imprisonment.  730 ILCS 5/5-8-1(a)(1)(b) (West 1994).  The applicable version of section 5-8-1(a)(1)(b) of the Code provides that a trial court may impose a natural life sentence for first degree murder if it finds the murder was accompanied by “exceptionally brutal or heinous behavior indicative of wanton cruelty” or “that any of the aggravating factors listed in subsection (b) of Section 9-1 of the Criminal Code of 1961 are present.”  730 ILCS 5/5-8-1(a)(1)(b) (West 1994).  

Section 9-1(b)(7) of the Criminal Code provides that a defendant found guilty of first degree murder may be sentenced to death if he was at least 18 years old at the time of the murder, the victim was under 12 years old, and the death resulted from “exceptionally brutal or heinous behavior indicative of wanton cruelty.”  720 ILCS 5/9-1(b)(7) (West 1994).  The factor relied upon by the trial court in imposing the discretionary life sentence was that the murder of the five-year-old victim was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty under section 5-8-1(a)(1)(b) (730 ILCS 5/5-8-1(a)(1)(b) (West 1994)).  Mindful of the statutory sentencing provisions that apply to this case, we address defendant’s challenge to the trial court’s finding that this offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. 

         ANALYSIS

In reviewing whether the trial court properly found that defendant’s behavior was exceptionally brutal or heinous indicative of wanton cruelty and, therefore, rendered him eligible for a life sentence, we apply an abuse of discretion standard.  See
 
People v. Hartzol
, 222 Ill. App. 3d 631, 651 (1991). 

Behavior is “heinous” if it is hatefully or shockingly evil, grossly bad, or enormously and flagrantly criminal.  
People v. La Pointe
, 88 Ill. 2d 482, 501 (1981).  Behavior is “brutal” if it is grossly ruthless, devoid of mercy or compassion, or cruel and cold-blooded.  
La Pointe
, 88 Ill. 2d at 501.  Behavior may qualify as exceptionally brutal or heinous indicative of wanton cruelty regardless of whether it involves the infliction of torture or unnecessary pain.  
La Pointe
, 88 Ill. 2d at 501.  

When assessing the brutality and heinousness of a crime, we must evaluate all of the facts surrounding the offense.  
Hartzol
, 222 Ill. App. 3d at 651
. 
 Various factors indicate behavior was exceptionally brutal or heinous, including
 premeditation, the unprovoked nature of the attack, the “senseless” nature of the act, the number of wounds inflicted, the danger created by the act, and the extent of the injury inflicted.  
Hartzol
, 222 Ill. App. 3d at 652.

The victim in this case died as the result of blunt abdomen trauma with multiple blunt force injuries contributing to his death.  Defendant punched, slapped, and kicked the victim, a defenseless five-year-old child, over the course of two days.  During that two-day period, the victim told defendant repeatedly that he wanted to go home.  Defendant’s confession indicates that he beat the victim simply because he cried and told defendant he wanted to go home rather than stay with him.  Dr. Jones’s testimony established that the victim sustained multiple injuries that were consistent with being struck with a closed fist and being kicked.  Those injuries included, among others, numerous blunt trauma injuries to his face, contusions on his chest, abdomen, and back, abrasions on his genitals, bleeding under his scalp and around both his kidneys, and hemorrhaging around his pelvis and spine.

The external examination revealed that at various locations on the victim’s body the injuries were consistent with being caused by blunt force and were confluent.  Dr. Jones defined “confluent” as meaning “you have several discrete injuries but there’s so many in a given geographic area that they look like one.”  She used the word “confluent” to describe the bruises and contusions on the face, both left and right side.  She indicated that “there were so many that they ran together.”  External examination of the thorax including chest, abdomen, and back revealed the presence of multiple contusions.  In the genital region, there were several abrasions of the genitalia themselves, the penis, adjacent to the penis and near the scrotum.  The genital injuries were consistent with blunt force trauma. 

The internal examination revealed multiple injuries consistent with blunt force trauma. The record reflects the  presence of “multiple areas of bleeding under the surface of the scalp” both in the front and back of the head indicating blunt force applied to the head.  The record reflects  multiple areas of bleeding in the chest and abdomen.  The spleen showed multiple contusions.  The victim’s various internal organs were lacerated.  The liver showed several lacerations and Dr.  Jones noted that “[y]ou can get multiple lacerations in one really, really severe blow, but the space between them is very likely there was more than one blow.”  Additionally, Dr. Jones noted “there’s been some indication that there was significant force applied to the abdominal cavity, enough that it lacerated his liver.”  Regarding the kidney that was lacerated, Dr. Jones indicated that you would “see laceration of the kidney in things like traffic accidents and things like that.”  The extent of the internal bleeding indicated there was blunt trauma to both the front and back of the victim’s body.

Regarding external and internal injuries to the thorax, ranging from 10 to 25 in number, Dr. Jones indicated, “It really isn’t possible when you’ve got this many injuries on the body to be able to count.  All you can say is that there were many.”
 

Defendant, relying on 
People v. Andrews
, 132 Ill. 2d 451 (1989), contends that when determining whether a defendant’s sentence based on behavior found to be exceptionally brutal or heinous indicative of wanton cruelty is an abuse of discretion the following factors must be considered: (
1) the defendant’s past history of violent crimes; (2) presence of an intent to kill beyond that found in the nature of the crime’s elements; (3) lack of remorse; and (4) premeditation or intentionally torturous conduct.  Defendant argues based on these factors that the life sentence imposed in this case cannot be affirmed.

In 
Andrews
, the defendant and his codefendant entered the car of the two victims, who had just exited the expressway.  Andrews pointed his gun at both victims, fired a gun at the driver, killing him, and took $7 from the other victim after hitting her in the eye.  The trial court sentenced defendant to an extended term of 70 years in prison finding the offense accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  
Andrews
, 132 Ill.2d at 454-55.

The Illinois Supreme Court held that the extended-term sentence imposed by the trial court constituted an abuse of discretion and identified several reasons, including the fact the defendant did not have a violent criminal history, to support that holding.  
Andrews
, 132 Ill. 2d at 466.  In addition, the court noted there was no evidence in the record reflecting the defendant showed a callous attitude or a total lack of remorse after the murder or indicated prior to his offense he intended to kill the victim.  
Andrews
, 132 Ill. 2d at 466.  The court also noted that “[d]efendant indicated his remorse at the sentencing hearing, and the trial judge accepted [his] expression as sincere, stating that one of the reasons he was not imposing a natural life sentence was defendant’s expression of sorrow.”  
Andrews
, 132 Ill. 2d at 466.  The court rejected the State’s argument that an extended sentence was justified because the defendant’s conduct was exceptionally brutal or heinous indicative of wanton cruelty.  
Andrews
, 132 Ill. 2d at 465-66. Based on its consideration of a variety of factors, the court decided not to impose an extended sentence.  
Andrews
, 132 Ill. 2d at
 466.
 

We find 
Andrews
 factually distinct from the instant case and for that reason not particularly instructive.  In the instant case the victim was a five-year-old child.  In 
Andrews
 the defendant fired a gun and killed the adult victim during a robbery.  Here, the five-year-old child victim sustained multiple blunt force injuries repeatedly over a period of two days causing his death.  The victim repeatedly begged to be allowed to go home to his mother.  Defendant responded to the victim’s crying and pleas to go home with violent blows to his body. 

Although we find 
Andrews
 factually distinct, we address each of the four factors applied in 
Andrews
, which defendant argues should be considered in determining whether the trial court abused its discretion in sentencing defendant to life in prison.  Regarding defendant’s history of violent crimes, we recognize that the trial court was required, under the Code, to consider defendant’s criminal history in determining what sentence to actually impose.  730 ILCS 5/5-5-3.1(7) (West 1998) (absence of criminal history qualifies as mitigating factor); 730 ILCS 5/5-5-3.2(3) (West 1998) (history of prior criminal activity qualifies as aggravating factor).  Here, the trial court’s statement at the conclusion of the hearing on remand that it had considered everything brought to its attention in mitigation, including the presentence report, reflects it considered defendant’s lack of criminal history.  We note the presentence report, which the trial court specifically indicated it had considered, reflected that defendant had no prior felony convictions.

Defendant next contends “there is little in this record to form a basis to conclude that, after reflection, [defendant] lacked remorse for his crime.”  In support of this contention, defendant emphasizes that he pleaded guilty, became distraught after realizing he killed the victim, and turned himself in and confessed. 

We agree with defendant that actions demonstrating remorse or a lack thereof are relevant to the brutal or heinous determination.  
Andrews
, 132 Ill. 2d at 466; 
People v. Nester
, 123 Ill. App. 3d 501, 506 (1984) (noting that “a defendant’s subsequent demonstration of remorse for his conduct or the lack of a penitent spirit is an important factor in determining whether his conduct is indicative of wanton cruelty”).  However, we reject his contention and find his behavior more analogous to that of the defendant in 
Nester
.

In 
Nester
, the victim came to the aid of a woman that the defendant was harassing.  
Nester
, 123 Ill. App. 3d at 502.  The defendant punched the victim several times and then stabbed him as he fell to the ground.  
Nester
, 123 Ill. App. 3d at 502.  In determining the defendant’s behavior was exceptionally brutal or heinous indicative of wanton cruelty, the reviewing court relied in part upon evidence that showed the defendant lacked remorse.  
Nester
, 123 Ill. App. 3d at 506.  Specifically, the court noted that the defendant walked away from the victim after inflicting the knife wound, did not attempt to help the victim, and declined to testify at the sentencing hearing.  
Nester
, 123 Ill. App. 3d at 506.

Like the defendant in 
Nester
, here defendant simply walked away as the victim lay dying, did not summon help for the victim, and declined to testify at the sentencing hearing.  Defendant acknowledges he left the house and did not aid the victim when he was near death, but argues that his actions were consistent with “mere fear” and  a “distorted thought process brought on by [his] drug use.”  In addition, defendant speculates that “it is quite possible” that his decision to walk away was motivated not by a lack of remorse but by the possibility that there was simply nothing that could have been done for the victim, since his internal injuries may not have initially appeared life threatening and the injury to his liver may have been deadly from the moment it was inflicted.  Defendant’s arguments constitute mere conjecture given the absence of any evidence in the record establishing that the influence of any drug or his belief that there was nothing which could be done to help the victim prompted him to leave the victim alone in the house.  Indeed, like the defendant in 
Nester
, here defendant did not testify at the original sentencing hearing or testify at the sentencing hearing conducted on remand.

Defendant was obviously aware that the victim’s condition was serious as he attempted to give him CPR when he noticed him breathing abnormally on Thursday afternoon and shortly thereafter observed him spitting up a yellow-green fluid.  However, instead of calling paramedics after attempting to give the victim CPR and observing the victim spitting up fluid, defendant simply left his house without notifying anyone of the victim’s condition.  The record reflects defendant’s conduct was devoid of mercy or compassion, thereby supporting the trial judge’s conclusion that the victim died as the result of exceptionally brutal or heinous behavior indicative of wanton cruelty.  
La Pointe
, 88 Ill. 2d at 501.   

Moreover, the fact that defendant the next day turned himself into the police, confessed, and eventually pled guilty indicates that he was willing to accept responsibility for his criminal conduct.  Remorse and accepting responsibility for the consequences of one’s conduct are not necessarily the same.  The record reflects the trial judge properly considered the fact that defendant accepted responsibility for his conduct when determining what sentence to impose.  However, the record reflects a lack of remorse by defendant.  Unlike 
Andrews
, where defendant expressed his remorse, here defendant’s conduct demonstrated callous indifference to the victim and a lack of remorse.  Defendant’s conduct devoid of mercy or compassion supports the trial court’s finding that his behavior was exceptionally brutal or heinous indicative of wanton cruelty.

Defendant contends, relying on 
Andrews
, that the “presence of an intent to kill over and beyond that found in the nature of the crime’s elements” is a factor relevant to the exceptionally brutal or heinous determination
.  Defendant argues the evidence failed to establish this factor.  
We note that 
in reversing the defendant’s sentence in 
Andrews
, the supreme court observed that while all murders are brutal and heinous to a certain degree, section 5-8-2 of the Code, which provides for extended sentencing, was not intended to convert every murder into an extraordinary offense subject to an enhanced sentence.  
Andrews
, 132 Ill. 2d at 466.  This observation by the Illinois Supreme Court is consistent with the principle later recognized in 
Hartzol
 that “[i]n determining whether conduct is exceptionally brutal or heinous, the court may not consider those acts which simply exemplify, without more, the legal elements of the offense for which the defendant was convicted and instead must look for additional aggravating factors.”   
Hartzol
, 222 Ill. App. 3d at 652.  

However, 
Hartzol
 also recognized that the number of wounds inflicted and the extent of the injury can be considered in determining whether behavior is exceptionally brutal or heinous indicative of wanton cruelty.  
Hartzol
, 222 Ill. App. 3d at 652.  In the instant case, the record reflects that the number of wounds inflicted and the extent of the injury inflicted support the trial judge’s conclusion that the victim died as the result of exceptionally brutal or heinous behavior indicative of wanton cruelty. 

We find the conduct in the instant case to be comparable to conduct in cases where extended-term or natural-life sentences have been upheld.  The victim, a defenseless five-year-old child, was beaten repeatedly over a prolonged period of time.  
His repeated pleas to be released and sent home with his mother were ignored by defendant.  Defendant responded to the victim’s cries to go home by beating him.  The facts of this case demonstrate additional aggravating factors beyond merely the legal elements of the offense which support the finding by the trial court that defendant’s behavior was exceptionally brutal or heinous indicative of wanton cruelty. 

Defendant next contends that his offense was not premeditated or torturous and that these factors, therefore, did not support the trial court’s finding of exceptionally brutal or heinous behavior indicative of wanton cruelty.  

We reject defendant’s contention that his offense was not torturous in light of the evidence showing he inflicted numerous and extensive injuries upon the victim over the course of two days and refused to allow the victim to go home despite repeated pleas from the victim.  We note that the absence of  evidence of premeditation does not automatically preclude a trial court from finding behavior exceptionally brutal or heinous indicative of wanton cruelty.  
People v. Pirrello
, 207 Ill. App. 3d 208, 217 (1991).  As previously discussed, there was a significant amount of evidence related to several other relevant factors supporting the trial court’s brutal or heinous finding.  Based upon this evidence, we reject defendant’s contention that the absence of evidence showing premeditation negated the validity of the trial court’s conclusion that defendant’s behavior was exceptionally brutal or heinous indicative of wanton cruelty.

Defendant lastly argues that his conduct was similar to that of the defendant in 
People v. Lucas
, 132 Ill. 2d 399 (1989), whose behavior the supreme court found was not exceptionally brutal or heinous indicative of wanton cruelty.  
Lucas
 is distinguishable from the instant case.

In 
Lucas
, the defendant, who was intoxicated, went into the bedroom of the victim, his seven-month-old son, and shook him in his crib.  
Lucas
, 132 Ill. 2d at 410.  While shaking him, he banged the victim against the side of a crib.  
Lucas
, 132 Ill. 2d at 410-11.  After shaking the victim, the defendant observed that the victim had stopped breathing, and in an attempt to revive him, he splashed him with water and then performed CPR.  
Lucas
, 132 Ill. 2d at 411.  The defendant went to bed.  When the defendant checked on the victim the following morning, he discovered he was dead.  
Lucas
, 132 Ill. 2d at 411.  After finding that the victim’s death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty and that there was insufficient mitigating evidence to preclude imposition of the death penalty, the trial court sentenced the defendant to death.  
Lucas
, 132 Ill. 2d at 415.  

The supreme court found that the circumstances surrounding the victim’s death were not “exceptionally brutal or heinous 
and
 indicative of wanton cruelty.”  (Emphasis in original.)  
Lucas
, 132 Ill. 2d at 446.  In support of its finding, the supreme court noted that the victim’s death resulted from suffocation and occurred almost immediately after the defendant inflicted his injuries.  
Lucas
, 132 Ill. 2d at 446.  In addition, the supreme court noted that there was evidence indicating that the injuries could have been inflicted by a single blow and that no conclusive evidence indicated the victim’s death was premeditated, prolonged, or torturous.  
Lucas
, 132 Ill. 2d at 446.

In contrast to 
Lucas
, here, the victim’s death was not caused by a single blow.  Rather, here, according to the medical examiner, the victim “died as a result of blunt abdomen trauma with multiple blunt force injuries contributing to his death.”  The victim’s beating was prolonged and his death resulted from blunt abdomen trauma caused by multiple blunt force injuries.  The record reflects not a single blow, but multiple blows contributed to the victim’s death.  The beating took place over a period of two days.  When asked how many internal and external injuries were suffered by the victim, Dr. Jones indicated “It really isn’t possible when you’ve got this many injuries on the body to be able to count.  All you can say is that there were many.” 

Furthermore, in 
Lucas
 there was evidence that the defendant was intoxicated at the time of the murder.  Here, while defendant’s mother testified that defendant had begun using drugs when he was 18 or 19 years old, including marijuana, crack cocaine and heroine, there was no evidence indicating defendant was intoxicated or under the influence of drugs during the two-day period of time when he beat the victim to death.  Furthermore, despite the fact the victim began spitting up a yellow-green fluid after he gave him CPR, defendant left his house without notifying anyone of the gravity of the victim’s condition.

In evaluating the brutality and heinousness of the crime, “the entire spectrum of facts surrounding the given incident must be analyzed and evaluated.”  
People v. McGee
, 121 Ill. App. 3d 1086, 1089 (1984).  The factors to be considered are not limited to the four factors articulated in the 
Andrews
 case and relied upon by defendant to support the argument that the imposition of a life sentence was an abuse of discretion by the trial court.  Courts have properly considered various additional factors indicating behavior was exceptionally brutal or heinous indicative of wanton cruelty, including the following: the unprovoked and senseless nature of the attack (
McGee
, 121 Ill. App. 3d at 1091); number of wounds inflicted (
People v. Devine
, 98 Ill. App. 3d 914, 925 (1981)); the extent of the  injury inflicted (
Hartzol
, 222 Ill. App. 3d at 652); use of a series of actions to terrorize and endanger the victim (
People v. Viens
, 109 Ill. App. 3d 1017, 1028 (1982)); conduct devoid of mercy or compassion (
La Pointe
, 88 Ill. 2d at 501); the amount of force used, including wholly gratuitous violence (
People v. Ratzke
, 253 Ill. App. 3d 1054, 1071 (1993)); and the mental anguish of the victim (
People v. Clark
, 102 Ill. App. 3d 414, 426 (1981)).

We note, the question of whether a defendant is eligible for a natural-life sentence is separate from the question of whether, upon consideration of the factors in aggravation and mitigation, such a sentence should actually be imposed.  As previously noted, under the statute that dictates the sentencing options in this case, the finding by the court that the crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty permitted but did not require the court to impose a life sentence.  See 730 ILCS 5/5-8-1(a)(1)(b) (West 1994).  The statute requires the exercise of discretion.

In the instant case, the experienced trial judge properly used his discretion in evaluating and analyzing the entire spectrum of facts surrounding the murder.  Defendant indicated his willingness to accept responsibility for the murder by pleading guilty and the trial judge took into consideration defendant’s acceptance of responsibility at the sentencing hearing.  However, the record reflects the defendant’s conduct was devoid of mercy or compassion.

We find the trial court properly evaluated and analyzed the entire spectrum of facts surrounding the murder of the five-year-old victim in this case.  The life sentence imposed for this crime is not an abuse of discretion but is supported by a variety of factors including, but not limited to, the unprovoked and senseless nature of the attack; the number of wounds inflicted; the extent of the injury inflicted; the prolonged nature of the offense; the conduct devoid of mercy or compassion; the amount of force used; the repeated gratuitous violence; and the mental anguish of the victim. 

For the reasons previously discussed, we cannot conclude that the trial court abused its discretion by finding defendant’s behavior exceptionally brutal or heinous indicative of wanton cruelty.  Accordingly, we affirm defendant’s conviction
 and sentence of life in prison.

Affirmed. 

O’BRIEN, P.J., and GALLAGHER, J., concur.