THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICKEY McGEE, Defendant-Appellant.

Second District   No. 83—486

Opinion filed February 22, 1984.

G. Joseph Weller and Kyle Wesendorf, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Rickey McGee, was found guilty in a jury trial of attempt (murder) (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a)), armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2), and aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a)). He was sentenced to concurrent extended 40-year terms of imprisonment for attempted murder and armed violence.

On appeal defendant raises the following issues: (1) whether the act for which he was convicted of attempted murder was accompanied by exceptionally brutal or heinous behavior to warrant an extended-term sentence; and (2) whether the armed-violence conviction must be vacated as arising out of the same physical act as the attempted-murder conviction, and the cause remanded for resentencing on the attempted-murder conviction.

The testimony of the victim, Nolan Banks, and his girl friend, Barbara Duncan, established that Banks went to the Future Disco in North Chicago at about 10 p.m. on January 15, 1983. Barbara Duncan arrived at 1 a.m. Banks had a beer or two there that evening and he and Duncan left at 2 a.m. The Future Disco was crowded that night and many people were leaving then. Outside, Duncan had ahold of Banks' arm—his other wrist was in a splint. Banks looked up and saw defendant, whom he knew, standing in front of him. Defendant said something, then pulled out a shotgun and shot Banks in the stomach. Defendant was about four feet away at the time. Just before being shot Banks had pushed Duncan away from him. Both Banks and Duncan testified Banks did not possess any weapon that night or say anything to defendant before being shot. Banks admitted that he had sprained his wrist when he hit one Kurt Nash on January 5, 1983. Defendant had broken up the fight and he and Banks exchanged words then. Numerous other witnesses for the State testified that Banks did not possess a weapon that evening.

Dr. Shien-Keng Shih, a surgeon, testified that Banks suffered a

near fatal, large stomach wound, 10 centimeters by 5 centimeters, which hospitalized him until March 28, 1983. The injury necessitated removal of three fourths of his small bowel and part of his large bowel. Banks will suffer permanent abnormal digestive functioning.

For the defense Kurt Nash testified that on January 5, 1983, while at the Ace of Clubs bar in Waukegan, he was struck in the face by Nolan Banks without provocation. After he was struck a second time by Banks, defendant came up and told Banks to get back and leave Nash alone.

Defendant then testified that on January 5, 1983, he saw Nash being beaten by Banks and others at the Ace of Clubs and he walked in between them and told them to leave Nash alone. The fighting ended and he went home. The next day he again saw Banks at the Ace of Clubs and they argued about defendant's interference in the fight the previous day. Later that evening Banks and another person walked by him, and the other person fired a handgun four times, wounding a person with defendant. A couple of days later he heard Banks was going to get him.

Defendant further stated that he went to the Future Disco alone at about 12:30 a.m. on January 16, 1983. He saw Banks in the tavern, but did not speak to him. He testified he did not have a gun with him. When he left the Future Disco at 2 a.m., Banks approached him with a handgun in his right hand, pointed it at him, and said, "What you going to do now, punk?" Then someone nearby passed him a rifle and he shot Banks thinking Banks was going to kill him. He then ran, dropped the rifle, and gave himself up the next day. He admitted telling the police first that while outside the Future Disco someone handed him what he thought was a stick, and it went off accidentally. In a second conversation with the police he told them he knew it was a gun and he fired it intentionally.

At the sentencing hearing, the trial court in a lengthy recitation of the reasons for the sentence stated, in pertinent part, as follows:

"As far as this court is concerned, Mr. McGee, and not for the reasons given, because the jury didn't believe that, for reasons of his own, decided to kill an individual. He obtained a shotgun, which is a very dangerous weapon, and one which is rather non-selective in what he was going to hit with it, went to a social event in an area with very, very many people, and with a tremendous, callous disregard, as far as I'm concerned, for any and all of the other people that were present, shot someone with what this court feels was a substantial cold and premeditated intent to murder.

Frankly, only given the benefit of our extraordinary medical science, that, in fact, it was not murder.

I don't think that there's any question in so far as what was mentioned by the state in so far as a previous conviction of a Class 2, that extended term does not apply. But as far as this court is concerned, the way the act was performed, even where he shot the victim, the presence of all the other people were around, brings the facts and circumstances of this case clearly within extended term, in that the actions of the defendant were exceptionally brutal and heineous [*sic*], and indicative of wanton cruelty on his behalf."

■ It is defendant's first contention on appeal that the act for which he was convicted of attempted murder was not accompanied by exceptionally brutal or heinous behavior to justify imposition of an extended-term sentence. Primarily relying upon a lack of evidence of premeditation, his asserted meritorious conduct in voluntarily turning himself in and his expressing remorse at the sentencing hearing, and the absence of infliction of numerous wounds as is present in other cases where extended-term sentences have been upheld on review, defendant maintains his conduct was not exceptionally brutal or heinous to warrant an extended term of imprisonment.

The statutory extended-term provision pertinent to this case allows a trial court to impose an extended-term sentence upon a defendant convicted of any felony where "the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).) The legislative scheme in regard to extended-term sentences requires the degree of brutality or heinous behavior to be "exceptional." (*People v. Fieberg* (1982), 108 Ill. App. 3d 665, 670, 439 N.E.2d 543.) In evaluating the brutality and heinousness of a defendant's conduct, the entire spectrum of facts surrounding the given incident must be analyzed and evaluated. (*People v. Strait* (1983), 116 Ill. App. 3d 110, 115, 451 N.E.2d 631; *People v. Devine* (1981), 98 Ill. App. 3d 914, 925, 424 N.E.2d 823.) In *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, our supreme court held that the phrase " '*** exceptionally brutal or heinous behavior, indicative of wanton cruelty' " contained in section 5—8—1(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1)) authorizing natural life imprisonment did not require " 'torture or unnecessary pain upon his victim' " in order to find "brutal" or "heinous" behavior. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344.) The court stated:

" 'Heinous' is defined by Webster's Third New International Dictionary (unabridged) as 'hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal'; 'brutal' includes 'grossly ruthless,' 'devoid of mercy or compassion: cruel and cold-blooded.' Clearly, in our opinion, the statute does not limit the imposition of a sentence of natural life imprisonment to only those murders involving torture or the infliction of unnecessary pain." 88 Ill. 2d 482, 501, 431 N.E.2d 344.

Defendant contends that there is no evidence of premeditation that he went to the Future Disco armed for the purpose of shooting Banks or that he planned the offense, a factor found to be significant in determining whether the conduct is exceptionally brutal or heinous. (See, *e.g., People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344; *People v. Winston* (1982), 106 Ill. App. 3d 673, 688, 435 N.E.2d 1327.) However, we believe the evidence and the reasonable inferences drawn therefrom do establish premeditation by defendant's unprovoked act of shooting an unarmed victim. While the defendant testified he did not bring a weapon that evening, was "handed" a rifle by someone and shot in self-defense, the jury chose not to believe him. The trial judge disbelieved this testimony too as he indicated at the sentencing hearing. Such a determination of premeditation by the trial court under the evidence here was proper even though disputed by the defendant. See *People v. Goodman* (1983), 116 Ill. App. 3d 125, 131, 451 N.E.2d 607.

Defendant also argues that a defendant's lack of remorse for his conduct is an important factor in determining if a defendant's conduct is indicative of wanton cruelty. (See, *e.g., People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344; *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 1023, 439 N.E.2d 1311.) Here, defendant maintains he turned himself in to the police and expressed remorse to the court at the sentencing hearing. The trial court apparently disbelieved defendant's late statement of remorse, and such matters of credibility and demeanor are best left to the trial judge whose opportunity to consider these factors is superior to that afforded by the cold record in this court. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) Defendant's actions at the time of the shooting and immediately thereafter are more indicative of his true feelings.

Finally, defendant cites numerous cases in which the appellate court has emphasized the infliction of numerous wounds as indicative of wanton cruelty. (See, *e.g., People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823; *People v. Childs* (1981), 95 Ill. App. 3d 606, 420 N.E.2d 513.) While we agree with those decisions, a single act which

causes death or injury may also be sufficient to demonstrate exceptionally brutal or heinous behavior considering the entire conduct of the defendant. See *People v. Strait* (1983), 116 Ill. App. 3d 110, 115, 451 N.E.2d 631; *People v. Rowe* (1983), 115 Ill. App. 3d 322, 329, 450 N.E.2d 804.

■ The factors present here which we believe demonstrate the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty are: defendant's premeditated, senseless act in shooting the victim in apparent retribution over a previous argument; the absence of any immediate provocation by the unarmed victim; defendant's indifference to any potential harm to the many other people around which could be caused by the shotgun blast; and defendant's shooting of the victim with a shotgun at close range which obviously would result in death or grave and permanent injury to the victim. All these factors were relied on by the court below, and we conclude it did not err in finding exceptionally brutal and heinous conduct indicative of wanton cruelty under these circumstances.

■ We need not address defendant's second contention that the armed-violence conviction cannot stand because of his conviction as well for attempted murder as the State has conceded that we must vacate the armed-violence conviction. However, defendant also has requested that we remand the attempted-murder case for resentencing in view of the vacation of the armed-violence conviction. Since the trial court sentenced defendant separately for each offense and the record does not indicate that the court was influenced by the armed-violence conviction in imposing sentence for the attempted-murder offense, remand for resentencing is unnecessary. (*People v. Payne* (1983), 98 Ill. 2d 45, 55-57, 456 N.E.2d 44.) There is no evidence tending to show that the trial judge considered the extra conviction for armed violence in passing sentence for attempted murder.

For the foregoing reasons, the judgment of conviction and sentence for attempted murder is affirmed, and the conviction for armed violence is vacated.

Affirmed in part, vacated in part.

UNVERZAGT and HOPF, JJ., concur.