THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANCIS CLIFFORD JAMES KITE, Defendant-Appellant.

Fifth District  No. 5—88—0785

Opinion filed October 17, 1990.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

H. Wesley Wilkins, State's Attorney, of Jonesboro (Kenneth R. Boyle, Stephen E. Norris, and Debra Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Francis Clifford James Kite, was charged by information in the circuit court of Union County with one count of murder and two counts of armed violence. After a trial by jury, he was found guilty on all counts and sentenced to a 40-year term of imprisonment on the murder conviction and a 30-year term of imprisonment on each armed violence conviction.

Carol Riehl, Kite's neighbor, testified that Kite and the victim, Ronald Bunton, came to her house around 11 p.m. on April 24, 1987. Both had been drinking. At one point, Bunton suggested hiring a prostitute for Riehl's roommate. Riehl became angry and in turn Kite became angry and told Bunton that he could introduce him to people who "would rather cut his throat than look at him." Kite and Bunton left around 1:30 a.m. Riehl's roommate, Charles Hughes, corroborated her testimony.

State Police officer Greg Geitman testified that he spoke with Kite on April 27, 1987, and Kite told him he dropped Bunton off at the car wash where he worked at around midnight on April 24, 1987. Rhonda Lane, who worked at the car wash, testified that Bunton did not report for work that night.

Charlene Beaty, Bunton's mother, testified that Bunton had left home early in the evening on April 24 to go to the car wash and pick up his check. He was then going to go visit Kite and Paula Henke. Around 11:30 p.m. the car wash called and told her that Bunton had not reported to work. Henke told Beaty that Kite and Bunton had been at her house but left in order for Bunton to go to work. Beaty also spoke with Kite several days later and he told her that he dropped Bunton off at the car wash where he worked. On the morning of April 27, 1987, Kite spoke with Beaty and she told him to "stay away from me from now on." Kite replied that he did not kill Bunton. This was before Bunton's body, which had been found the evening before, was identified.

On July 16, 1987, police officers searched the home of Kite's foster parents with their permission and found a .22 caliber pistol in the attic. Donald Gunnell, a ballistics expert, testified that at least one of the bullet fragments removed from Bunton's body came from this gun. Fred

Allen, Kite's foster father, testified that Kite had been at the house on April 25, 1987. Flora Allen, Kite's foster mother, testified that Kite and Paula Henke were at the house on April 25, 1987, and that she heard someone go up to the attic but did not know whom.

Thomas Samples testified that he was in jail in April of 1987 and that several days after being arrested Kite admitted killing Bunton. Rodney Thurmon had a cell next to Kite's in the Menard correctional facility where Kite was serving a sentence on an unrelated conviction. According to Thurmon, who was incarcerated on another charge, Kite admitted killing Bunton because Bunton had been dating his girlfriend. Kite also told him there was another person present when Bunton was killed.

During closing argument, the prosecutor made numerous comments which Kite now argues were prejudicial and which deprived him of a fair trial:

> "[T]here has been no explanation by anyone that this man did not do it, and we would submit to you that everything you have heard from that chair indicates that he, in fact, was involved and killed Ronnie Bunton when he was only twenty-one years old and sent his soul out into eternity forever and ever and ever ***.
>
> * * *
>
> I would submit to you that he is the one that placed that handgun there. There is no evidence whatsoever that anyone besides Jimmy Kite placed that gun there in that attic of his foster parents.
>
> * * *
>
> Mr. Kite got up, shoved Mr. Bunton and said, 'I am going to introduce you to some people that will cut your throat.' I suggest that that shows you the character of Defendant Jimmy Kite.
>
> * * *
>
> Then Mr. Kite came back in to get a picture of Carol Riehl's sister because of the fact that she has a problem with her boyfriend, and Mr. Kite made the statement at that time that he was going to mess with her boyfriend. That too shows the character of this man.
>
> * * *
>
> Again, we tried to find something that would say that this man didn't commit this murder, but it wasn't there.
>
> * * *
>
> It is your job to find [the defendant] guilty on all counts."

Additionally, the prosecutor characterized Kite's defense as a "shell game."

■ Kite argues that he was prejudiced and denied a fair trial as a result of the remarks made by the prosecutor during his closing argument. We need not address the merits of Kite's argument, however, as his failure to object during trial and to include the issue in a post-trial motion waives this issue. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267. See also *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; *People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261.

■ Kite acknowledges his failure to preserve the issue, but argues that the remarks were so improper as to constitute plain error. Under the plain error exception to the waiver rule, a reviewing court may consider plain errors or defects which affect substantial rights. (*People v. Gacho* (1988), 122 Ill. 2d 221, 522 N.E.2d 1146; 107 Ill. 2d R. 615(a).) The purpose of the rule is to correct grave injustices which may have been done to the defendant, and may be invoked where the evidence is closely balanced or the error is of such magnitude as to deny the defendant a fair trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) The plain error rule is not a general savings clause, however, preserving for review all errors affecting substantial rights whether or not they are brought to the attention of the trial court. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) It is a narrow and limited exception to the general waiver rule which is to be invoked only when the error alleged is so substantial that it deprived the defendant of a fair trial. (*People v. Szabo* (1986), 113 Ill. 2d 83, 497 N.E.2d 795, citing *People v. Pasterino* (1982), 91 Ill. 2d 178, 435 N.E.2d 1144.) "Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed." (*People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227, 231.) While improper comments by a prosecutor have been found to be so prejudicial as to warrant the application of the plain error doctrine (*People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058; *People v. Young* (1975), 33 Ill. App. 3d 443, 337 N.E.2d 40), we find that the errors alleged here, either singularly or cumulatively, are insufficient to justify the invocation of the rule.

■ The evidence against Kite cannot be called close. Bunton was last seen with Kite. Although Kite testified that he left Bunton at the car wash at around 11:30 p.m. on April 24, both Carol Riehl and Charles Hughes testified that Kite and Bunton did not leave Riehl's house until around 1:30 a.m. on April 25. The gun used to kill Bunton was found in the attic of Kite's foster parents where Kite stored some of his clothes. Finally, two fellow inmates testified that Kite admitted to them that he killed Bunton. Improper comments by the prosecutor will warrant reversal where it cannot be said that the comments did not contribute to the

defendant's conviction. (*People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17; *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) Given the weight of the evidence against Kite, we conclude that the prosecutor's comments did not contribute to his conviction.

■■■ Kite also argues that should we find the plain error doctrine inapplicable, we should find the failure to properly preserve the errors to be ineffective assistance of counsel. Ineffective assistance of counsel exists where counsel's performance falls below an objective standard of reasonableness and that but for counsel's unprofessional errors, there is a substantial likelihood that the outcome of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Having determined that any potential prejudice to Kite was harmless in light of the evidence against him, we could not consistently find that Kite was prejudiced by counsel's failure to object and so the second prong of the *Strickland/Albanese* test is not met.

■■ Kite next argues that his armed violence convictions must be vacated because he cannot properly be convicted of armed violence and the predicate felony. The State concedes this issue but maintains that remanding the case for a new sentencing hearing is unnecessary. We agree. Kite's 40-year sentence on the murder conviction is well within the range provided for that offense (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(a)), separate sentences were imposed for each count, and there is no indication in the record that the trial court improperly considered the vacated armed violence convictions. (*People v. Craddock* (1987), 163 Ill. App. 3d 1039, 516 N.E.2d 1357; *People v. Hope* (1986), 142 Ill. App. 3d 171, 491 N.E.2d 785; *People v. Nix* (1985), 133 Ill. App. 3d 1054, 479 N.E.2d 1147; *People v. McGee* (1984), 121 Ill. App. 3d 1086, 460 N.E.2d 843.) We therefore vacate Kite's armed violence convictions, but decline to remand for resentencing.

For the foregoing reasons, the judgment of the circuit court of Union County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

HOWERTON and GOLDENHERSH, JJ., concur.