WELCH, Judge, dissenting.
The majority affirms Russell's conviction for capital murder and his sentence of death. I concur to affirm Russell's conviction; however, because I believe the trial court's finding regarding the only aggravating circumstance asserted by the State,-that "[t]he capital offense was especially heinous, atrocious, or cruel compared to other capital offenses," as set out in § 13A-5-49(8), Ala.Code 1975, was completely unsupported by the facts, I would remand the case with directions to resentence Russell to life in prison without the possibility of parole.
I.
The main opinion affirms Russell's death sentence because it determined that the aggravating circumstance that the offense was especially heinous, atrocious, or cruel applied because Katherine suffered psychological torture as a result of her close relationship with Russell and because Russell *443 chased her around the house before shooting her in the head.
A.
The prosecutor described the victim as follows: "Eleven-year-old Katherine Helen Gillespie, a beautiful, bright, precious little girl with a future full of promise, loved by everyone, young and old alike." (R. 1611.) The death of such a winsome and sympathetic victim tugs at the heartstrings of anyone who hears about this senseless and utterly incomprehensible murder.
The jury returned a verdict unanimously finding that Katherine's murder was especially heinous, atrocious, or cruel when compared to other capital offenses and unanimously recommended that Russell be sentenced to death. The main opinion appears to treat the jury's finding regarding the existence of an aggravating factor as a weight-of-the-evidence determination that this Court cannot review:
"In this case, '[u]tilizing their common knowledge and experience as members of the human race, the jurors were capable of evaluating the proof and determining whether the victim suffered severe mental pain.' State v. Nesbit, 978 S.W.2d 872, 886-87 (Tenn.1998). The jury determined that, based on the entire set of facts surrounding the murder, Katherine had suffered psychological torture before her death. It is not for this Court to draw any contradictory conclusions from the evidence."
261 So.3d at 441.
I disagree with the above statement. In citing State v. Nesbit, 978 S.W.2d 872 (Tenn.1998), the main opinion overlooks the fact that, in Tennessee, the jury does not render an advisory sentence, it renders the final sentence. See Tenn.Code Ann., § 39-13-204 (West 2014). Of course, in Alabama, the jury's verdict in the penalty phase of a capital-murder trial is advisory in nature. See § 13A-5-49(e), Ala.Code 1975. As such, the jury's advisory verdict at the conclusion of the penalty phase of a capital-murder trial is not binding on the trial court. § 13A-5-47(a), Ala.Code 1975. In the final review, the sentencing court determines what aggravating circumstances it finds to exist and then weighs those aggravating circumstances against any mitigating circumstances it finds to exist.
"In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its advisory verdict, unless such a verdict has been waived pursuant to Section 13A-5-46(a) or 13A-5-46(g). While the jury's recommendation concerning sentence shall be given consideration, it is not binding upon the court."
§ 13A-5-47(e), Ala.Code 1975 (emphasis added). This Court's review of the trial court's findings is governed by § 13A-5-53(a), Ala.Code 1975:
"In any case in which the death penalty is imposed, in addition to reviewing the case for any error involving the conviction, the Alabama Court of Criminal Appeals, subject to review by the Alabama Supreme Court, shall also review the propriety of the death sentence. This review shall include the determination of whether any error adversely affecting the rights of the defendant was made in the sentence proceedings, whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence, and whether death was the proper sentence in the case. If the court determines that an error adversely affecting the rights of the defendant was made in the *444 sentence proceedings or that one or more of the trial court's findings concerning aggravating and mitigating circumstances were not supported by the evidence, it shall remand the case for new proceedings to the extent necessary to correct the error or errors. If the appellate court finds that no error adversely affecting the rights of the defendant was made in the sentence proceedings and that the trial court's findings concerning aggravating and mitigating circumstances were supported by the evidence, it shall proceed to review the propriety of the decision that death was the proper sentence."
§ 13A-5-53(a), Ala.Code 1975 (emphasis added.) Therefore, State v. Nesbit does not support the proposition that, once Russell's jury rendered its advisory verdict, the trial court could not draw any contradictory conclusions from the evidence.
B.
I disagree with that part of the analysis in the main opinion upholding the trial court's finding that the killing was especially heinous, atrocious, or cruel based on specific events occurring before and following Katherine's death. The main opinion cites State v. Tirado, 358 N.C. 551, 595, 599 S.E.2d 515, 544 (2004), and People v. McGee, 121 Ill.App.3d 1086, 1089, 77 Ill.Dec. 539, 542, 460 N.E.2d 843, 846 (1984), as persuasive authority for allowing consideration of the automobile wreck and the placement of Katherine's body in a garbage can as relevant factors in determining whether her killing was especially heinous, atrocious, or cruel.
The Tirado court stated that "the entire set of circumstances surrounding the killing" of two females was relevant to a finding that the murders were heinous, atrocious, or cruel. However, the events before the killings were clearly part of the res gestae and clearly contributed to a finding that the murders were heinous, atrocious, or cruel. The Tirado opinion characterizes the victims as having "endured a prolonged dehumanizing ordeal" before being shot in the head. 358 N.C. at 595, 599 S.E.2d at 544. Specifically, the victims were abducted by members of a street gang, were locked in the trunk of a car, were driven around while they could hear discussions about which gang member would kill them. The victims knew for a long time that they were going to die, and they begged to be spared.
With regard to McGee, Illinois allows for the enhancement of a sentence in a noncapital case where an "offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." People v. McGee, 460 N.E.2d at 846. In evaluating what constitutes exceptionally brutal or heinous behavior indicative of wanton cruelty, the McGee court stated that "the entire spectrum of facts surrounding the given incident must be analyzed and evaluated." Id. McGee was convicted of attempted murder. The trial court found the sentence enhancement applicable because McGee's conduct was motivated by a desire for revenge, it was a premeditated, a shotgun was discharged in a location crowded with innocent people, the victim was unarmed, and McGee had shown no remorse for his conduct. It is also notable that the offense in McGee was a noncapital offense and that the definition of conduct necessary to enhance the sentence for a noncapital offense included "brutal or heinous behavior indicative of wanton cruelty," which is quite different from the aggravating circumstance set out in § 13A-5-49(8), Ala.Code 1975. This enhancement provision does not correspond with the aggravating circumstance that an offense be "especially heinous, atrocious, or cruel compared to other capital offenses," because that phrase has been narrowly *445 defined by Alabama caselaw relating to the required findings necessary for a court to impose capital punishment. The Illinois provision also fails to require the necessary comparative analysis of the facts of the instant case with other capital cases that must be done before a court may impose a death sentence.
I do not agree that either of these cases provides persuasive authority in Katherine's case for the proposition that events before (the automobile accident) and after Katherine was killed (placing Katherine's body in a trash can) are relevant in an evaluation of whether Katherine's death was especially heinous, atrocious, or cruel. It is possible that the automobile accident triggered some motive for killing Katherine, but there is no indication in the record that Katherine was aware of this. Likewise, Russell's placing Katherine's body in a garbage can, in what appeared to be an attempt to contain her blood, could not be considered any kind of infliction of torture upon Katherine in that it occurred after she was dead.
C.
Contrary to the main opinion and the trial court's findings, I do not believe that Katherine's age and/or her relationship with Russell were, in her case, appropriate factors to be considered to establish the aggravating circumstance that the offense was "especially heinous, atrocious, or cruel compared to other capital offenses."
It seems from the trial court's comments following the penalty phase and from the sentencing order that the trial court found that the aggravating factor existed in large part because the murder was a breach of trust in the in loco parentis relationship that existed between Katherine and Russell. However, I have found no authority providing that a breach of trust by a parent or a person acting in the place of a parent is a consideration in determining whether a murder was especially heinous, atrocious, or cruel compared to other capital offenses, and the State has cited no authority for this proposition. In fact none of the aggravating factors set out in § 13A-5-49, Ala.Code 1975, concern the status of the victim. Each aggravating circumstance concerns the status of the murderer, or the circumstances surrounding the killing of the victim, not the personal characteristics or identity of the victim or the relationship between the victim and the murderer.
In Clark v. State, 896 So.2d 584 (Ala.Crim.App.2000), this Court cautioned that "the status of the victim cannot by itself establish that a crime was especially heinous, atrocious, or cruel and that consideration of the status of the victim will not be appropriate in all cases." (Emphasis added.) See also State v. Follin, 263 Kan. 28, 51, 947 P.2d 8, 24 (1997) ("The State seems to suggest that the tender ages of the victims contribute to the atrocious manner in which the murders were committed. No authority is cited for the proposition. The plain language of the [Kansas] statute does not support the State's suggestion. The focus is on defendant's conduct,[18 ] on his actions as he killed the victims. It is not on the nature of the victim."). The status of the victim was a factor in Clark because the trial court found that Clark deliberately chose a victim with physical and mental disabilities ; thus, this Court *446 held that the "consideration of the victim's physical and mental handicap was appropriate in determining that the crime was especially heinous, atrocious, or cruel." Clark v. State, 896 So.2d at 649. However, the trial court also found, based on the autopsy, that among the 32 stab wounds there were a number of defensive wounds indicating that the victim tried to defend himself despite his physical handicap, and there was evidence indicating that some wounds caused great pain, and that the victim "remained alive suffering that pain for an extended period of time." Clark v. State, 896 So.2d 584, 647 (Ala.Crim.App.2000).
I note that in Gobble v. State, 104 So.3d 920, 986 (Ala.Crim.App.2010) (on return to remand), this Court cited Brown v. State, 982 So.2d 565, 607 (Ala.Crim.App.2006), as authority for the proposition that "[a] victim's age and physical condition are relevant when assessing this aggravating circumstance." I do not want to be understood as stating that a victim's age and physical condition are never relevant when assessing this aggravating circumstance, see Clark, supra; however, that was not a holding in Brown, and I do not believe those are relevant factors in Katherine's case. The Court in Brown merely noted that the victim in that case was "a frail and elderly lady." 982 So.2d at 607 ("The amount of violence used against Mrs. Keel, a frail and elderly lady, was excessive."). The circuit court's sentencing order did not include the victim's age or physical condition as facts contributing to its finding that the killing was especially heinous, atrocious or cruel. In Brown, the trial court found the killing to be especially heinous, atrocious, or cruel because the evidence disclosed that, during an approximately 30-minute ordeal, the victim begged the defendant to spare her life, made unsuccessful attempts to escape from the defendant, and was "hog-tied" and gagged so tightly that she slowly died of oxygen deprivation. In affirming the trial court's findings, this Court held that "[t]he evidence establishes that the victim suffered for an appreciable amount of time following the assault and clearly endured extensive psychological torture." Brown v. State, 982 So.2d 565, 607 (Ala.Crim.App.2006).
Brown in turn cites Scott v. State, 937 So.2d 1065, 1083 (Ala.Crim.App.2005), and Ward v. State, 814 So.2d 899, 923-24 (Ala.Crim.App.2000), as authority for the conclusion that, in those cases, killing the young victims was especially heinous, atrocious, or cruel. However, neither case held that killing young children was per se especially heinous, atrocious, or cruel. In Scott, the trial court noted in its findings of fact that "[t]his victim was not an adult, but a ten-year (10) old child, who was four feet five inches tall (4' 5?) and weighed only sixty-four (64) pounds. Her assailant, on the other hand, a much larger and stronger nineteen-year-old (19) male." 937 So.2d at 1091. The trial court made findings that the 10-year-old victim died of asphyxiation during a rape or an attempted rape and that the physical evidence obtained pursuant to the victim's autopsy disclosed that the victim lived long enough during the attack to know what was happening to her and to realize that she was being strangled to death. The trial court found this to be especially heinous, atrocious, or cruel.
In Ward the trial court found that the killing of the infant victim was especially heinous, atrocious, or cruel based on evidence of multiple blunt-force injuries and suffocation, and evidence including that the infant suffered numerous injuries over a long period that also contributed to the death.
*447 The victim in Gobble was a four-month-old baby. The crime was found to be especially heinous, atrocious, or cruel because the child suffered numerous blunt-force injuries and broken bones that caused great pain that lasted for several hours before the child died.
To the victim and his or her loved ones, any murder of a beloved grandparent, parent, or child, is obviously especially heinous, atrocious, or cruel. However, the murder of a victim who is related to the offender does not per se prove the existence of the especially heinous, atrocious, or cruel aggravating circumstance. To find otherwise is not in keeping with the United States Supreme Court's dictate that, to be constitutional, a determination of what constitutes heinous, atrocious or cruel requires a "narrow interpretation." Norris v. State, 793 So.2d 847, 853 (Ala.Crim.App.1999), citing Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and Lindsey v. Thigpen, 875 F.2d 1509 (11th Cir.1989).
Unfortunately, the murder of a family member by another family member is not uncommon; nor is it uncommon for a parent to kill his or her child. In a significant number of murders such as this one, when one family member murders another, the victim will undoubtedly experience feelings of horror and betrayal upon realizing that the family member intends to kill him or her. However, there is simply no authority for the proposition that the breach of trust and the victim's feelings of horror and betrayal resulting from that breach of trust establish the aggravating circumstance that the murder is especially heinous, atrocious, or cruel.
II.
The trial court made the following findings of fact regarding the especially heinous, atrocious, or cruel aggravating circumstance:
"The Court is in a significantly better position to evaluate this case as it is compared to capital cases. This is based not only upon the Court's personal experiences of having tried and sentenced other capital offenses, but also from reading those cases that are of record in the State of Alabama and in other jurisdictions. Heinous is defined as extremely wicked or shockingly evil. The Court can think of little that would be more wicked or shockingly evil, than for someone in a parental role to intentionally kill the one they are entrusted to love and protect. Atrocious is defined as outrageously wicked or violent.
"The evidence in this case tended to prove that Russell chased Katherine into a corner and put a gun to the back of her head and shot her. In light of the relationship of the victim and Defendant in this case, no act could be more outrageously wicked. The term cruel means designed to inflict a high degree of pain. The cruelty involved in this case does not only involve physical pain, it also involves mental and emotional pain. The mental and emotional pain of rejection and abuse experienced by a child when being killed by a person she called 'Daddy' is beyond comprehension.
"This crime does fit the definition of especially heinous, atrocious and cruel when compared to other capital offenses, because it was a pitiless crime. It was unnecessarily emotionally and psychologically torturous to the victim, an eleven year old girl, Katherine Helen Gillespie. The victim was the person that Russell had been entrusted to care for, love and protect, not only by his family, *448 but by society. Russell had voluntarily undertaken that obligation."
(R. 156-57.)
Thus, the trial court stated in its sentencing order that the especially heinous, atrocious, or cruel aggravating circumstance applied and that death was the appropriate punishment because the evidence tended to prove: 1) that Russell's conduct exhibited pitilessness; 2) that Katherine, a child, was chased by Russell before being shot, which created some period in which Katherine had to endure the terror of knowing that she was about to be killed, which in turn, subjected Katherine to psychological torture; 3) that Katherine, an 11-year-old child, recognized and had to bear the betrayal of Russell, who was Katherine's father figure and only parental figure, whom Katherine addressed as "Daddy," which made Russell's conduct pitiless, outrageously wicked, and incomprehensibly cruel and further constituted the infliction of unnecessary psychological torture upon Katherine.[19]
"A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' " Godfrey v. Georgia, 446 U.S. 420, 429, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).
"In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court of the United States held that the application of certain state death penalty statutes violated the Eighth Amendment to the United States Constitution as applied to the states through the Due Process Clause of the Fourteenth Amendment. The Supreme Court held that those statutes' lack of principled standards to prevent the sentencing authority from arbitrarily and capriciously imposing capital punishment rendered the application of the sentencing scheme constitutionally infirm. E.g., ibr.US_Case_Law.Schema.Case_Body:v1">id. at 310, 92 S.Ct. 2726 (Stewart, J., concurring); id. at 311, 92 S.Ct. 2726 (White, J., concurring).
"Since Furman, many states have revised their death penalty statutes to require that the sentencing authority consider aggravating and mitigating circumstances, thus limiting the discretion of the sentencing authority. See Maynard v. Cartwright, 486 U.S. 356, 362, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). The Supreme Court's post-Furman cases make it clear that to survive Eighth Amendment scrutiny, a factor used as an aggravating circumstance in a capital punishment statute must provide a 'principled way to distinguish' cases in which the death penalty is appropriate from cases in which it is not. See, e.g., Godfrey v. Georgia, 446 U.S. 420, 433, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). The Supreme Court has held that the 'especially heinous, atrocious, or cruel' aggravating circumstance provides such a principled distinction only where the state appellate courts employ a consistent and narrow interpretation of that circumstance to channel the discretion of the sentencer. See Cartwright, 486 U.S. at 365-66, 108 S.Ct. 1853 (upholding the Oklahoma Court of Criminal Appeals' interpretation of the 'especially heinous, atrocious, or cruel' aggravating circumstance to require, before a death sentence is imposed, a finding that the victim was tortured or was caused to suffer serious physical abuse).
"In Lindsey v. Thigpen, 875 F.2d 1509 (11th Cir.1989), the United States Court of Appeals for the Eleventh Circuit upheld this Court's application of the 'especially heinous, atrocious or cruel' aggravating *449 circumstance because this Court's application of it provided a 'principled way to distinguish' cases in which the death penalty is appropriately imposed from cases in which it is not. Id. at 1513, 1515 (upholding our application of Ala.Code 1975, § 13A-5-49(8) and quoting Godfrey, 446 U.S. at 431, 100 S.Ct. 1759 ). The Eleventh Circuit emphasized that the Alabama appellate courts' interpretation of § 13A-5-49(8) passed muster under the Eighth Amendment because this Court and the Court of Criminal Appeals had consistently defined 'especially heinous, atrocious or cruel' to include only 'those conscienceless or pitiless homicides which are unnecessarily torturous to the victim.' Lindsey v. Thigpen, at 1514 (quoting Ex parte Kyzer, 399 So.2d 330, 334 (Ala.1981) ) (emphasis added)."
Ex parte Clark, 728 So.2d 1126, 1137-38 (Ala.1998) (emphasis added; footnote omitted).
"[I]n determining whether the prosecution presented sufficient evidence to establish beyond a reasonable doubt that the ... murder[ ] w[as] especially heinous, atrocious, or cruel, it is imperative that we continue to use a 'consistent and narrow interpretation' of this aggravating circumstance. It is this narrow interpretation and a consistent application of it that render this aggravating circumstance constitutional."
Norris v. State, 793 So.2d 847, 852-54 (Ala.Crim.App.1999) (emphasis added). Norris further cited the following as the "mandate" in Clark:
" 'We cannot depart from the established meaning of the words enacted by the Legislature-"especially heinous, atrocious or cruel"-and apply those words to include murders that do not involve the infliction of torture on the victim. Such a departure would abandon the essential characteristic that made our previous applications of § 13A-5-49(8) compatible with the Eighth Amendment. We are bound to retain the interpretation of "especially heinous, atrocious or cruel" that has provided a consistent and principled distinction between those murders for which the death sentence is appropriate and those for which it is not. See [ Maynard v.] Cartwright, 486 U.S. [356,] at 363, 108 S.Ct. 1853, [100 L.Ed.2d 372 (1988) ]. Godfrey [v. Georgia ], 446 U.S. [420] at 433, 100 S.Ct. 1759, [64 L.Ed.2d 398 (1980) ].' "
Norris v. State, 793 So.2d at 863 (quoting Ex parte Clark, 728 So.2d at 1140 ).
A trial court's finding that a killing was pitiless does not establish the especially heinous, atrocious, or cruel aggravating circumstance. What makes a killing pitiless is that it was unnecessarily torturous. See Ex parte Clark, 728 So.2d at 1137-38 ("The Eleventh Circuit emphasized that the Alabama appellate courts' interpretation of § 13A-5-49(8) passed muster under the Eighth Amendment because this Court and the Court of Criminal Appeals had consistently defined 'especially heinous, atrocious or cruel' to include only 'those conscienceless or pitiless homicides which are unnecessarily torturous to the victim.' Lindsey v. Thigpen, at 1514 (quoting Ex parte Kyzer, 399 So.2d 330, 334 (Ala.1981) ) (emphasis added)."[20] ). An unnecessarily torturous killing is what constitutes a killing that is especially heinous, atrocious, or cruel.
*450 Judge Patterson, in Norris, presented three factors that are "indicative of 'especially heinous, atrocious, or cruel.' " Norris v. State, 793 So.2d at 854. These factors are: 1) Was the victim subjected to physical violence beyond what was necessary to cause death? 2) Did the victim endure suffering after the assault that caused death? and 3) Did the victim endure psychological torture? Each factor "must have been present for an appreciable lapse of time, sufficient enough to have caused prolonged or appreciable [physical violence, suffering, or psychological torture,] i.e., the period ... must be prolonged enough to separate the crime from 'ordinary' murders for which the death penalty is not appropriate." Norris v. State, 793 So.2d 847, 861 (Ala.Crim.App.1999).
A.
There was no evidence presented to establish or even to allow an inference that Katherine was subjected to physical violence beyond that necessary to cause her death.
" '[The infliction of this kind of physical injury] may be accomplished either or both by subjecting the victim to injury of a different nature than, and in addition to, that proximately causing death, or by the repeated infliction of injuries of the same nature as that causing death, where at least some of the injurious acts are separated by a lapse of time sufficient enough to cause the victim prolonged suffering.... Such additional or repeated violence is often considered cruel ... where inflicted on a living and conscious victim....' "
Norris v. State, 793 So.2d at 854 (quoting Thomas M. Fleming, Annot., Sufficiency of Evidence, for Purposes of Death Penalty, to Establish Statutory Aggravating Circumstance that Murder Was Heinous, Cruel, Depraved, or the Like-Post-Gregg Cases, 63 A.L.R. 4th § 2[a], p. 488 (1988)).[21]
Other than the gunshot, the only injuries present on Katherine's body were the contusion on her chest consistent with an air-bag deployment, the small bruise on her leg with no indication of where or when that injury occurred, and the scars on her hymen. However, the source of those injuries was not connected to Russell or to the incident of her death. Moreover, the trial court prohibited the State from suggesting any inference from the condition of Katherine's hymen.
Therefore, absent evidence to support this factor, it has no application in determining whether the murder was especially heinous, atrocious, or cruel.
B.
The evidence established that Katherine did not suffer after being shot.
" '[A] principal focus of inquiry in determining whether the murder was especially heinous, cruel, depraved, or the like has been whether the victim lost consciousness or died instantaneously or quickly after the fatal attack, without time for appreciable suffering, or instead lost consciousness or died only after a lapse of time significant enough to permit such suffering.'
"[Thomas M.] Fleming, [Annot.] supra [Sufficiency of Evidence, for Purposes of Death Penalty, to Establish Statutory Aggravating Circumstance that Murder Was Heinous, Cruel, Depraved, or the Like-Post-Gregg Cases, 63 A.L.R.4th,] § 2[a], at 489. See also [ Bush v. State, 431 So.2d 555, 560 (Ala.Crim.App.1982) ] ('We recognize that an instantaneous *451 death caused by gunfire is not ordinarily a heinous killing. Odom v. State, 403 So.2d 936 (Fla.1981).')."
Norris v. State, 793 So.2d at 858-59.
There was no dispute that Katherine died instantly from a contact gunshot wound to the back of her head. Therefore, absent evidence to support this factor, it has no application in determining whether the murder was especially heinous, atrocious, or cruel.
C.
There was no evidence presented to establish or to allow an inference that Katherine was subjected to psychological torture.
"A third factor that is considered especially indicative of 'especially heinous, atrocious or cruel' is the infliction of psychological torture. Psychological torture can be inflicted by 'leaving the victim in his last moments aware of, but helpless to prevent, impending death.' [Thomas M.] Fleming, [Annot.] supra [Sufficiency of Evidence, for Purposes of Death Penalty, to Establish Statutory Aggravating Circumstance that Murder Was Heinous, Cruel, Depraved, or the Like-Post-Gregg Cases, 63 A.L.R.4th,] § 2 [b], at 492-93. 'Thus, mental suffering may be found where a victim witnesses the murder of another (particularly a family member) and then realizes that soon he or she will also be killed, as well as where the victim is expressly taunted with the prospect of his or her own death.' Id. at § 2[b], at 493 (footnotes omitted)."
Norris v. State, 793 So.2d at 859-860. See also Shaw v. State, 207 So.3d 79 (Ala.Crim.App.2014).
The theory that Katherine had been chased before being shot was first presented at trial by the State in its guilt-phase closing argument when the State asserted that Katherine's location and position in the cubby at the time she was shot disclosed that she had been chased through the house, knowing that she was about to be killed. This theory was repeated in the State's penalty-phase closing argument.
Although there had been no supporting evidence, the State asserted during its guilt-phase final closing argument that Russell was a "madman" or was in a "rage" when he killed Katherine and stated three times that Russell had chased Katherine until Katherine became trapped in the cubby, where he shot her. (R. 1644, 1648.)
During the penalty-phase opening statements, the prosecutor stated:
"When Ryan Russell chased [Katherine] and she was cowering in a twelve inch gap, what must she have been thinking? What have I done? What have I done?"
(R. 1739; emphasis added.) During the penalty-phase closing arguments, the State argued that Katherine "was running for her life" before being shot.
"[The prosecutor, Mr. Bostick:] I have to wonder the first time that [Katherine] saw [Russell] with the gun-and clearly she did because she was running for her life. As she is running from him, what was she saying to him?"
(R. 1811-1812; emphasis added.)
"[Mr. Bostick:] You see, when the defendant took that gun, chased her down, trapped her, cornered her, put that gun behind her ear and in anger pulled the trigger...."
(R. 1812; emphasis added.)
The trial court, in turn, found evidence of blood spatter in the area adjacent to the dryer in the laundry cubby when she was shot by Russell to be sufficient evidence to find that Katherine was in fear of injury or *452 death. There was no evidence indicating that Russell, armed with a pistol, had chased Katherine at all, nor was there any evidence that he had done so for a sufficient time to constitute psychological torture. According to the trial court's findings, the alleged chase elevated the crime to outrageously wicked and cruel and psychologically torturous because it was during this span of time that Katherine, a young child, faced the realization and was left to anticipate that her beloved father figure was going to end her life. Therefore, it was in the period of the alleged chase that Katherine allegedly suffered unnecessary psychological torture. There was no evidence indicating that Katherine ever saw that Russell was armed with a pistol and no evidence indicating that she had any awareness that she was about to be killed.
There was no evidence regarding what transpired between Katherine and Russell from the time they entered the house following the accident and the time Russell placed the muzzle of his pistol against the back of Katherine's head, as she crouched in the laundry room, and shot her. There were no facts presented at trial allowing an inference that Katherine was chased before she was shot.
" 'An inference is merely a permissible deduction from the proven facts which the jury may accept or reject or give such probative value to as it wishes. It is a logical and reasonable deduction from the evidence and is not supposition or conjecture. Guesswork is not a substitute. A supposition is a conjecture based on the possibility or probability that a thing could have or may have occurred without proof that it did occur. The possibility that a thing may occur is not alone evidence, even circumstantially, that the thing did occur.'
" Boyington v. State, 748 So.2d 897, 901 (Ala.Crim.App.1999) (quoting Mullins v. City of Dothan, 724 So.2d 83, 86 (Ala.Crim.App.1998) (emphasis added)(internal quotation marks and citations omitted))."
Reid v. State, 131 So.3d 635, 640-41 (Ala.Crim.App.2012). " 'An inference can be drawn only from facts, and mere possibilities will not sustain a legitimate inference.' " Greer v. State, 563 So.2d 39, 43 (Ala.Crim.App.1990) (quoting Rungan v. State, 25 Ala.App. 287, 288, 145 So. 171, 172 (1932) (emphasis added)).
The State's evidence-that Katherine was crouching in the laundry room-allows the possibility that Katherine could have been chased through the house. However, it is a theory based on only possibility and speculation completely lacking in evidentiary support.[22] In terms of possibilities, it is also possible that, instead of being chased, Katherine was already in the laundry room when approached by Russell and that she never became aware of her fate or that she did so only seconds before she was shot. There is no set of facts in evidence that establishes psychological torture. We simply do not know why Katherine chose to crouch down next to the dryer. There may have been a chase or there may not have been. There may have been some action on Russell's part that made her crouch there without any belief that she was in mortal danger. It is also possible that Katherine's position next to the dryer was not the result of any fear on her part, but simply because she was doing something innocuous, such as retrieving an item that had fallen behind the dryer, and that she was then killed surreptitiously. There is no way to determine how probable one supposition is over the other supposition. We cannot infer that a *453 life-and-death chase occurred because Katherine was killed in a position suggesting a desire on her part to hide, nor can we infer that Katherine believed that she was about to die while that hypothetical chase was underway. There is also no way to determine if Katherine saw that Russell was armed with a pistol, or whether she saw him aim it at the back of her head. To do so is to pile one inference upon another, an exercise in speculation and conjecture the law does not allow.
" ' " '[A]n inference cannot be derived from another inference.' An inference must be based on a known or proven fact." ' Kmart Corp. v. Bassett, 769 So.2d 282, 287 (Ala.2000), quoting Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d 1220, 1224 (1992), quoting, in turn, Malone Freight Lines, Inc. v. McCardle, 277 Ala. 100, 107, 167 So.2d 274, 280 (1964). This Court has repeatedly held that 'it is not permissible to build inference upon inference which leads to pure conjecture or guess.' Johnson v. Louisville & N.R.R., 240 Ala. 219, 225, 198 So. 350, 354 (1940)."
Russell Corp. v. Sullivan, 790 So.2d 940, 950 (Ala.2001).
There is simply no evidence allowing an inference that Katherine was chased or that she knew she was about to die. Thus, a guess as to what went through her mind or what her mental state was immediately preceding her death cannot reasonably be made.
The trial court's finding that Katherine was chased is without factual support, and, thus, does not support the trial court's additional finding that Katherine endured psychological torture before her death.[23]
*454 Moreover, even if we were to accept as fact that Katherine entered the laundry room as a defensive maneuver to evade Russell or to take cover from what she realized to be Russell's intent to shoot her, this would not, without more, establish that the murder was especially heinous, atrocious, or cruel. " 'We refuse to hold that the mere apprehension of death, immediately before the fatal wounds are inflicted, amounts to serious psychological abuse prior to death.' " Norris v. State, 793 So.2d at 862, citing Phillips v. State, 250 Ga. 336, 297 S.E.2d 217, 221 (1982). As stated above, psychological torture must be present for an appreciable time, and there was no evidence in this case to allow such an inference. "See Phillips v. State, 250 Ga. 336, 297 S.E.2d 217, 221 (1982) ('We refuse to hold that the mere apprehension of death, immediately before the fatal wounds are inflicted, amounts to serious psychological abuse prior to death.')(emphasis added). See, e.g., Craig v. State, 510 So.2d 857, 868 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988) (this aggravating circumstance was not established because 'the murders were carried out quickly by shooting')." Norris v. State, 793 So.2d at 862.
Therefore, I do not believe that the trial court's reliance on alleged psychological torture will support a finding that Katherine's murder was especially heinous, atrocious, or cruel when compared to other murders.
Conclusion
Because I believe the trial court committed reversible error as explained above regarding the aggravating circumstance that the murder was especially heinous, atrocious, or cruel, and because the trial court found no other aggravating circumstance, I would remand the case for the imposition of a sentence of life imprisonment without the possibility of parole.

Alabama courts "have held that application of the especially heinous, atrocious, or cruel aggravating circumstance focuses on the manner of the killing...." Sneed v. State, 1 So.3d 104, 117 (Ala.Crim.App.2007) (holding that defendant was responsible for manner in which codefendant murdered the victim so that heinous, atrocious, or cruel aggravating circumstance applied).

This third category was discussed in Part I above.

Ex parte Kyser was abrogated by Ex parte Stephens, 982 So.2d 1148 (Ala.2006), in which the Alabama Supreme Court clarified that Kyser's discussion of an aggravating factor was dicta.

Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

There were no physical signs of a chase; there was testimony that the house was tidy.

For cases lacking in factual support to allow application of the aggravating factor that the offense was especially heinous, atrocious, or cruel, see: Ex parte Clark, 728 So.2d 1126, 1139-1140 (Ala.1998) (to establish heinous, atrocious, or cruel by showing that victim was aware of what was happening, and perhaps suffering after being shot, "the prosecution tried to imply during the trial that the victim had tried to 'run for the woods' ..., [but] the record indicates that whether [victim] was in fact even conscious and aware after the initial shots were fired would be a matter of mere speculation"); Bundy v. State, 471 So.2d 9, 21-22 (Fla.1985) (12-year-old victim was abducted from her school, "her deteriorated body was found in a hog pen approximately 45 miles from the scene of abduction.... The victim died of homicidal violence to the neck region of the body. At the time the body was found it was unclothed except for a pullover shirt around the neck. There were semen stains in the crotch of her panties found near the body. Blood was found on the blue jeans also found near her body, and there were tears and rips in some of her clothes.... There was no clear evidence offered to show that [the victim] struggled with her abductor, experienced extreme fear and apprehension, or was sexually assaulted before her death. In the absence of these types of facts, we must conclude that this case does not fit in with our previous decisions in which we have found the manner of the killing to be the conscienceless or pitiless type of killing which warrants a finding that the capital felony was especially heinous, atrocious or cruel."); State v. Cook, 259 Kan. 370, 403, 913 P.2d 97, 119 (1996) (reversing imposition of Kansas's "hard 40 [year] sentence," which Kansas applies in cases found to be heinous, atrocious, or cruel, the Court stated: "Even when this evidence is viewed in the light most favorable to the prosecution, a rational fact finder could not find that the shooting was committed in a special or unusual degree or to an extent greater than in other cases so as to support the existence of the aggravating circumstance that this crime was committed in a particularly heinous, atrocious, or cruel manner beyond a reasonable doubt. Most of the State's arguments regarding 'torture' experienced by the victim in this case are based on conjecture or speculation."); State v. Follin, 263 Kan. 28, 33, 947 P.2d 8 (1997) (There was no evidence to support finding that a father's killing his two young daughters by stabbing, was heinous, atrocious, or cruel, but killings appeared to have been carried out in a manner to avoid anguish or physical abuse); State v. Moose, 310 N.C. 482, 495-96, 313 S.E.2d 507, 516 (N.C.Ct.App.1984.) (insufficient evidence to submit the question of especially heinous, atrocious, or cruel to the jury where, although the victim was stalked, it was conjecture whether the victim knew he was being stalked and whether he was in fear that his death was impending).